Cheshire
No. 80-419

JOHN P. BURROWS & a.

v.

CITY OF KEENE

June 26, 1981

592

*Lewis A. McMahon*, of Keene, and *Cristiano, Kromphold & Green*, of Keene (*Mr. McMahon* and *Eric J. Kromphold, Jr.*, on the brief and *Mr. Kromphold* orally), for the plaintiffs.

594

*Charles H. Morang*, city attorney, by brief and orally, for the defendant.

GRIMES, C.J. The issue in this case is whether an amendment to the Keene zoning ordinance, which had the effect of including a substantial part of the plaintiffs' land in a conservation district, resulted in a taking of the plaintiffs' property entitling them to damages for inverse condemnation. We hold that it did.

On October 15, 1973, the plaintiffs, John P. Burrows and George Whitham, purchased approximately 124 acres of undeveloped woodland on the southern side of Goose Pond Road in Keene for $45,000. Plaintiff Burrows is, and has been for many years, a real estate developer, and the property was purchased for the purpose of subdivision development, which was a permitted use in the rural zone in which it was located. Because of its proximity to the city, a golf course, and Goose Pond, the plaintffs thought that the property was very desirable for development.

In January 1975, the plaintiffs went to the Keene Planning Board and presented three plans for subdividing the property. The planning board indicated that the prospects of subdivision approval were not favorable because the city was trying to preserve as open space the area in which the plaintiffs' land was located. Accordingly, the board advised the plaintiffs to consult the city conservation commission concerning the possibility of selling the land to the conservation commission as an alternative to development. The conservation commission expressed a desire to purchase the property and requested a delay so that it could obtain federal funding to make the purchase. The plaintiffs agreed.

In August 1975, the city had the property appraised for $27,900, which was much less than either the purchase price of $45,000 or the city's assessment for tax purposes of $41,406. It appears that the appraiser improperly underassessed the value of the land based on the city's intended noncommercial use of the land. Nevertheless, the city offered the plaintiffs only $27,900 for the land.

Because the parties could not reach agreement on price, the plaintiffs went forward with their subdivision plans. In November 1975, they filed a formal application for subdivision approval. Various meetings with the planning board and the conservation commission led to the hiring of an engineering firm to draft more detailed subdivision plans. During these meetings, there was discussion as to whether the property should be developed at all. On July 23, 1976, the plaintiffs submitted more plans, together with an application for subdivision approval. After various studies and

meetings, a public hearing was held on September 27, 1976, following which the board denied the plaintiffs' application for subdivision approval and adopted a resolution favoring acquisition of the plaintiffs' land.

The plaintiffs did not appeal from the planning board's denial of their subdivision plan but instead brought this action for equitable relief in the superior court. In December 1977, the city amended its zoning ordinance. The effect of this amendment was to include 109 acres of the plaintiffs' land in a conservation zone and the balance in a rural zone. Thereafter, the plaintiffs amended their petition in the superior court to include a claim that the amendment to the zoning ordinance had deprived them of all reasonable use of that portion of their property which was included in the conservation zone and, in effect, sought damages for inverse condemnation.

The Trial Court (*DiClerico*, J.) dismissed the plaintiffs' claim regarding the denial of subdivision approval because of their failure to appeal the planning board decision. The court also found that there were valid reasons for the board's denial of the plaintiffs' application for subdivision approval. However, the court considered the claim based on inverse condemnation, ruled that the inclusion of the land in the conservation zone did constitute inverse condemnation and ordered that damages be determined by a jury if no appeal was taken from its ruling. The city appealed.

■■ Extended discussion is not required to dispose of the city's claim that the plaintiffs should not have been allowed to amend their petition to raise the constitutional issue of inverse condemnation. Although it was a new and different issue, it is one which the plaintiffs may raise at any time before the applicable statute of limitations has run. *J.E.D. Associates, Inc. v. Town of Atkinson*, 121 N.H. 581, 583, 432 A.2d 12, 14 (1981); *see Sundell v. Town of New London*, 119 N.H. 839, 849–50, 409 A.2d 1315, 1321 (1979). The defendant was given ample time to prepare to meet the issue, and there was no abuse of discretion in allowing the amendment. *See MacLeod v. Chalet Susse Int'l Inc.*, 119 N.H. 238, 244, 401 A.2d 205, 210 (1979).

■ The substantive issue raised in this case involves a principle that lies at the very foundation of civilized society as we know it. The principle that no man's property may be taken from him without just compensation reaches at least as far back as 1215, when on "the meadow which is called Runnymede" the Barons of England exacted from King John the Magna Carta, which contains at least three references to this fundamental truth. MAGNA

CARTA, arts. 28, 30 & 31, *reprinted in* 1 MASS. GEN. LAWS ANN. (West); *see Ferguson v. Keene,* 108 N.H. 409, 415, 238 A.2d 1, 5 (1968) (Grimes, J., dissenting). Our own constitution provides that "no part of a man's property shall be taken from him, or applied to public uses, without his consent . . . ." N.H. CONST. pt. 1, art. 12. Early on, this clause was held to require just compensation. *Piscataqua Bridge v. N.H. Bridge,* 7 N.H. 35, 66–70 (1834); *Eaton v. B. C. & M. R. R.,* 51 N.H. 504, 510–511 (1872). The same principle was embodied in the Fifth Amendment to the Constitution of the United States at the insistence of a majority of the states, including New Hampshire, in ratifying the Constitution. It has now been made binding on the states through the Fourteenth Amendment. *Webb's Fab. Pharmacies, Inc. v. Beckwith,* 101 S. Ct. 446, 450 (1980).

 It should be noted that the New Hampshire Constitution makes explicit what is implicit in the Fifth Amendment to the Federal Constitution; namely, that "no *part* of a man's property shall be taken from him . . . without his consent. . . ." N.H. CONST. pt. 1, art. 12. (Emphasis added.) Furthermore, our New Hampshire Bill of Rights provides that among the "natural, essential and inherent rights" of all men is the right of "acquiring, possessing, and protecting property; and, in a word, of seeking and obtaining happiness." N.H. CONST. pt. 1, art. 2. This fundamental right is recognized in the same article which recognizes the right of "enjoying and defending life and liberty." *Id. Gazzola v. Clements,* 120 N.H. 25, 411 A.2d 147 (1980).

 The rights mentioned in N.H. CONST. pt. 1, art. 2 are not bestowed by that constitutional provision but rather are recognized to be among the natural and inherent rights of all humankind. This provision of our Bill of Rights "has been held to be so specific that it 'necessarily limits all subsequent grants of power to deal adversely with it.' " *Metzger v. Town of Brentwood,* 117 N.H. 497, 502, 374 A.2d 954, 957 (1977) (quoting *Woolf v. Fuller,* 87 N.H. 64, 68, 174 A. 193, 196 (1934)). Because it limits all subsequent express grants of power, it necessarily limits the so-called police power, which is only an implied power. "The right to just compensation is [likewise] a constitutional restriction on the police power and is therefore superior to it." *Robbins Auto Parts, Inc. v. City of Laconia,* 117 N.H. 235, 237, 371 A.2d 1167, 1169 (1977). Indeed, we have specifically stated that both N.H. CONST. pt. 1, art. 2 and N.H. CONST. pt. 1, art. 12 "are limitations on the so-called police power of the State and subdivisions thereof. . . ." *L. Grossman &*

*Sons, Inc. v. Town of Gilford,* 118 N.H. 480, 482, 387 A.2d 1178, 1180 (1978).

 Because the constitution prohibits any taking of private property by whatever means without compensation, the just compensation requirement applies whenever the exercise of the so-called police power results in a "taking of property." The government may not do under an implied power that which it cannot do under an express power. In other words, it cannot do indirectly that which it cannot do directly. *Eaton v. B. C. & M. R. R.,* 51 N.H. at 510; *cf. Girard v. Town of Allenstown,* 121 N.H. 268, 271, 428 A.2d 488, 490 (1981).

 The question in the case before us is whether the action of the city constituted a taking of the plaintiffs' property. "Property," in the constitutional sense, is not the physical thing itself but is rather the group of rights which the owner of the thing has with respect to it. *United States v. General Motors Corp.,* 323 U.S. 373, 377–78 (1945); *Eaton v. B. C. & M. R. R., supra* at 511. The term refers to a person's right to "possess, use, enjoy and dispose of a thing and is not limited to the thing itself." *Metzger v. Town of Brentwood,* 117 N.H. at 502, 374 A.2d at 957; *see United States v. General Motors Corp. supra.* The property owner's right of "indefinite user (or of using indefinitely) . . . necessarily includes the right . . ." to exclude others from using the property, whether it be land or anything else. *Eaton v. B. C. & M. R. R., supra* at 511. "From the very nature of these rights of user and of exclusion, it is evident that they cannot be materially abridged without, *ipso facto,* taking the owner's 'property.' " *Id.* "The principle must be the same whether the owner is wholly deprived of the use of his land, or only partially deprived of it. . . ." *Id.* at 512.

 Although the interference with the property rights in *Eaton* involved a physical invasion of the land, the just compensation principle likewise applies if the abridgement of the rights is accomplished by a governmental regulation restricting the exercise of these rights. *Metzger v. Town of Brentwood,* 117 N.H. at 502, 374 A.2d at 957; *see San Diego Gas & Electric Co. v. City of San Diego,* 101 S. Ct. 1287, 1302–08 (1981) (Brennan, J., dissenting); *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415 (1922). Even though the United States Supreme Court found no taking in *Agins v. Tiburon,* 447 U.S. 255, 261–63 (1980) and *Penn Central Transp. Co. v. New York City,* 438 U.S. 104, 123–38 (1978), it recognized in both cases that the application of a zoning regulation to particular

property effects a taking if it "denies an owner economically viable use of his land. . . ." 447 U.S. at 260; *see* 438 U.S. at 138 n.36.

■■■ "Police power regulations such as zoning ordinances and other land-use restrictions can destroy the use and enjoyment of property in order to promote the public good just as effectively as formal condemnation or physical invasion of property." *San Diego Gas & Elec. Co. v. City of San Diego*, 101 S. Ct. at 1304 (Brennan, J., dissenting). It matters not to the owner whether the use of his land is taken from him by actual physical invasion or condemnation or whether he is prevented from using it by regulation. *Id.* On the other hand, the benefits resulting to the public from the taking may be equally great whether the taking is accomplished by regulation or actual condemnation. *Id.*

■■■ This is not to say that every regulation of private property through the police power constitutes a taking. Reasonable regulations that prevent an owner from using his land in such a way that it causes injury to others or deprives them of the reasonable use of their land may not require compensation. *See Penn Central Transp. Co. v. New York City*, 438 U.S. at 144–45 (Rehnquist, J., dissenting) (quoting *Mugler v. Kansas*, 123 U.S. 623, 668–69 (1887)); *Sibson v. State*, 115 N.H. at 128, 336 A.2d at 242. Nor do reasonable zoning regulations which restrict economic uses of property to different zones and which do not substantially destroy the value of an individual piece of property effect a taking requiring compensation. But arbitrary or unreasonable restrictions which substantially deprive the owner of the "economically viable use of his land" in order to benefit the public in some way constitute a taking within the meaning of our New Hampshire Constitution requiring the payment of just compensation. *See Sundell v. Town of New London*, 119 N.H. at 845, 409 A.2d at 1318; *Metzger v. Town of Brentwood,* 117 N.H. at 503, 374 A.2d at 958. It is a matter of degree. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. at 416. The owner need not be deprived of all valuable use of his property. If the denial of use is substantial and is especially onerous, a taking occurs. There can be no set test to determine when regulation goes too far and becomes a taking. Each case must be determined under its own circumstances. The purpose of the regulation is an element to be considered. *See Agins v. Tiburon*, 447 U.S. at 260–62. It will only be the cases which lie close to the line of constitutionality which will cause difficulty. The case before us, however, does not lie anywhere near the line.

We are aware of cases such as *Agins v. Tiburon*, 24 Cal. 3d 266, 598 P.2d 25 (1979), *aff'd on other grounds*, 447 U.S. 255 (1980),

which hold that a landowner who is the victim of an excessive use of the police power may not recover damages for inverse condemnation but must be satisfied with the remedies of mandamus or declaratory judgment to invalidate the regulation.

We reject this approach out of hand. It is contrary to our well-established law, which goes back at least as far as *Eaton v. B. C. & M. R. R.*, 51 N.H. 504 (1872). It is also, we believe, in violation of the Constitution of the United States. *See San Diego Gas & Elec. Co. v. City of San Diego*, 101 S. Ct. at 1294, 1301–08 (Brennan, J., dissenting and Rehnquist, J., concurring). We agree with Justice Brennan that it is always open to the governmental entity involved to rescind or repeal the offending regulation and thus avoid payment of damages for inverse condemnation from that point on. *Id.* at 1304–07. Until that is done, however, the owner's property has been taken during the interim period and he is entitled to compensation for that taking. *Id.* Limiting the landowner to actions which only invalidate the offending regulation will encourage municipal planners and other public officials to attempt to throw the burdens accompanying "progress" upon individual landowners rather than on the public at large. The allowance of damages for inverse condemnation during the period of the taking, however, should encourage such officials to stay well on the constitutional side of the line, *San Diego Gas & Elec. Co. v. City of San Diego, supra* at 1308 n.26 (Brennan, J., dissenting), and should also discourage harassment of property owners by repeated amendments of zoning regulations and the enactment of new ones. *See id.* at 1305–06 n.22.

Planners and other officials should be aware of possible personal liability for bad faith violations of a landowner's constitutional rights which may go beyond the damages recoverable for inverse condemnation. Cities and towns should also be aware of possible 42 U.S.C. § 1983 actions for damages for violations of the constitutional rights of citizens to be compensated for injuries suffered. *Owen v. City of Independence*, 100 S. Ct. 1398 (1980); *Monnell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

As we have said before, public officials have a duty to obey the constitution, and they have no right or legitimate reason to attempt to spare the public the cost of improving the public condition by thrusting that expense upon an individual. *See J.E.D. Associates, Inc. v. Town of Atkinson*, 121 N.H. at 583–84, 432 A.2d at 20; *Robbins Auto Parts, Inc. v. City of Laconia*, 117 N.H. at 237, 371 A.2d at 1169. The greater the cost of accomplishing something

which is considered to be in the public interest, the greater the reason why a single individual should not be required to bear that burden. *See Armstrong v. United States*, 364 U.S. 40, 49 (1960); *Monongahela Navigat'n Co. v. United States*, 148 U.S. 312, 325 (1893). Almost 110 years ago, Justice Jeremiah Smith of this court stated that the prospect of a great public benefit "may afford an excellent reason for taking the plaintiff's land in the constitutional manner, but not for taking it without compensation." *Eaton v. B. C. & M. R. R.*, 51 N.H. at 518; *see Ferguson v. Keene*, 108 N.H. at 415, 238 A.2d at 5 (Grimes, J., dissenting). Justice Holmes used similar language fifty years later in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. at 416.

Turning now to the zoning amendment involved in this case, we have already stated that it does not come anywhere near the line dividing constitutional and unconstitutional regulation.

From the outset, it was plain that the city wished that the plaintiffs' land be devoted to open space. The city's comprehensive plan sets out a goal of having fifty percent of the city remain as open space, and the Goose Pond area is one of those designated for preservation. The planning board and the conservation commission both took positions opposed to subdivision and in favor of acquisition of the plaintiffs' land by the city. The city, however, would not pay a reasonable price for the property, electing instead to offer to purchase the property for a sum representing the land's value based on the city's intended use of the land rather than the price to which the plaintiffs were entitled, which was one reflecting the land's highest and best use. In denying the plaintiffs' application, the planning board stated that the land should be protected as a wilderness area and passed a resolution favoring acquisition of the land by the city.

Instead of acquiring the plaintiffs' land by paying just compensation as required by our constitution, however, the city, when it found that it was unable to acquire it for little more than half its value, elected to accomplish its purpose by regulating the use of the property so as to prohibit all "normal private development." It is plain that the city and its officials were attempting to obtain for the public the benefit of having this land remain undeveloped as open space without paying for that benefit in the constitutional manner. The city sought to enjoy that public benefit by forcing the plaintiffs to devote their land to a particular purpose and prohibiting all other economically feasible uses of the land, thus placing the entire burden of preserving the land as open space upon the plaintiffs. The trial court found, in a well-considered opinion, that

the uses permitted were "so restrictive as to be economically impracticable, resulting in a substantial reduction in the value of the land" and that they prevented a private owner from enjoying "any worthwhile rights or benefits in the land."

The court also found that the interference with the plaintiffs' right to use that portion of their land falling within the conservation district was "sufficiently direct, sufficiently peculiar and of sufficient magnitude as to compel the court to conclude that fairness and justice require that the burden be borne by the city and not by the plaintiffs." These findings are amply supported by the evidence.

The purpose of the regulation is clearly to give the public the benefit of preserving the plaintiffs' land as open space. Its purpose is not to restrain an injurious use of the property. Although there may undoubtedly be some uses of the land which are sufficiently injurious to others that their use may be prohibited, the normal development of the land for residential purposes is not one of them.

The city's reliance on *Sibson v. State*, 115 N.H. 124, 336 A.2d 239 (1975), is therefore misplaced. In that case the prohibited use of the land was found to be harmful to the public because of the unique nature of the land. In any event, to the extent that *Sibson* is inconsistent with our present holding, it is overruled. Government may not violate the requirements of the constitution creating it under the guise of the so-called "police power." If it were allowed to do so, some excuse could be found for preventing the development of any parcel of land.

 We hold that the creation of the "conservation district" in Keene constituted a taking with respect to all of the plaintiffs' land which falls within it, entitling the plaintiffs to compensation for inverse condemnation in an amount equal to the diminution in the value of all of the plaintiffs' land resulting from the regulation. Although cases of the United States Supreme Court have been cited, we decide this case solely on the basis of the New Hampshire Constitution.

 Because a citizen should not be compelled to bear the financial burden of protecting himself from unconstitutional abuses of power, we hold that plaintiffs are entitled to reasonable counsel fees and double costs incurred in this appeal. *See* RSA 490:14-a (Supp. 1979); Supreme Court Rule 23. The matter is remanded for a determination of damages and for assessment of additional reasonable counsel fees and costs at the trial level

incurred after the effective date of the regulation. *See Harkeem v. Adams*, 117 N.H. 687, 691, 377 A.2d 617, 619 (1977).

*Appeal dismissed; remanded.*

All concurred.