Carroll
No. 84-159

FUNTOWN, USA, INC.

v.

TOWN OF CONWAY

October 24, 1985

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester, and *Law Offices of O. Lee Gregory*, of Conway (*Arthur G. Greene* and *O. Lee Gregory* on the brief, and *Mr. Green* orally), for the plaintiff.

*Upton, Sanders & Smith*, of Concord, and *Hastings & Son P.A.*, of Fryeburg, Maine (*Russell F. Hilliard* and *Peter G. Hastings* on the brief, and *Mr. Hilliard orally*), for the defendant.

BROCK, J. The defendant, the Town of Conway, appeals from that part of a superior court order that granted the plaintiff, Funtown, USA, Inc., the right to construct a water slide in North Conway and enjoined the town from interfering with its construction. The only issues before us are whether damages for inverse condem-

nation and attorney's fees should have been awarded to the plaintiff. We affirm in part and reverse in part.

In March 1982, the plaintiff appealed to the superior court a decision of the Conway Zoning Board of Adjustment denying its application for a building permit. Plaintiff also, in March 1982, filed a petition for declaratory judgment requesting a determination of the rights of the parties. RSA 31:77. During the pendency of the appeal, an amendment to the Conway Zoning Ordinance was adopted which barred the construction of water slides in Conway. Plaintiff's zoning appeal was consolidated for trial with its petition for declaratory judgment challenging the constitutionality of the amendment and its application to the plaintiff.

The cases were tried before a Master (*R. Peter Shapiro*, Esq.), in February 1984, whose findings and recommended rulings were approved by the Superior Court (*Temple*, J.). The master found and ruled as follows:

(1) that Funtown had a vested right to construct the water slide and that the town should be enjoined from interfering with the installation;

(2) that Funtown could construct the water slide by virtue of its "intent to build;"

(3) that the ZBA decision was unlawful and unjust and that the town should issue a building permit;

(4) that ordinances adopted on March 9, 1982, purporting to affect plaintiff's project were inapplicable or unconstitutional;

(5) that plaintiff should be awarded legal fees; and

(6) that the town's action constituted a taking for which plaintiff was entitled to compensation.

The Town of Conway brought this appeal. However, in May 1984, the town granted the plaintiff a building permit for the construction of the water slide, and the issues before us are therefore limited to attorney's fees and inverse condemnation. The relevant facts are set forth below.

Mark and Ann Goldman are the principals of a New Hampshire corporation known as Funtown, USA, Inc. In November 1978, Ann Goldman purchased land in North Conway in a high density commercial zone to be used for a recreational facility which would include a water slide. No zoning ordinances or other regulations existed in Conway at that time to prohibit a water slide. The anticipated income from the water slide was estimated to be forty percent of all profits earned at Funtown.

Mr. Goldman then filed a "registration of intent to build" as required by town ordinance. He obtained a driveway permit (which specifically mentioned the water slide) from the board of selectmen and approval for his project from the New Hampshire Water Supply and Pollution Control Commission.

In the fall of 1978, Mr. Goldman began construction of his recreational facility. The water slide molds were constructed and placed in storage in Florida in the winter of 1979–80.

On March 11, 1980, the town of Conway enacted its first zoning ordinance, under which the Funtown property became a conforming use in a business district. During this same year, Mr. Goldman postponed construction of the water slide for another year. The building, miniature golf course and roller skating rink, however, had already been completed in 1979.

In March 1981, the zoning ordinance was amended to replace the previously used "registration of intent to build" procedure with a "building permit" system. It grandfathered all existing building permits for one year. The plaintiff, meanwhile, arranged to have the molds for the water slide taken out of storage and shipped to the Conway site.

Later that summer, John Walsh, assistant town manager, visited the site and, after seeing the molds for the slide, told Mr. Goldman's son that a building permit would be required for its construction. He further opined that such a permit would probably be denied.

Mr. Goldman applied for a permit on October 7, 1981. The board of selectmen inquired about certain requirements concerning the septic system and parking facilities. Several selectmen suggested that a public hearing be held on this issue.

On the following day, Mr. Goldman provided the board with the technical data they had requested. The selectmen tabled the request for a permit, however, until a public hearing could be scheduled. Approximately sixty people, many of them neighbors of Funtown, attended the hearing on October 19. The reaction to the construction of the slide was for the most part negative.

The next selectmen's meeting was held on October 28. Mr. Goldman's counsel appeared to answer questions raised by a compilation of complaints regarding traffic problems which had been submitted to the board by Police Chief John Lance. The board told Mr. Goldman's counsel that because they had other matters to discuss, the issue would have to be considered another time. About an hour after he left, however, the board denied the plaintiff's request for a building permit.

Earlier that same day, an article written by John Walsh had

appeared in a North Conway newspaper. It was a criticism of the plaintiff's project, written in parable form.

On December 4, Mr. Goldman filed an appeal with the Conway Zoning Board of Adjustment (ZBA). He also met again with the board of selectmen on December 9. While the ZBA found no change of use, it upheld the selectmen's decision not to issue the permit because, on the basis of the evidence presented, the project would not be compatible and would constitute a nuisance to the neighborhood. The ZBA suggested that Mr. Goldman present an improved parking plan to the board of selectmen, and he then filed a new application, with a new plan.

The board of selectmen met on December 16 to discuss Mr. Goldman's amended application for a building permit. Mr. Goldman suggested limiting the hours of use for the water slide. The board reluctantly admitted that such a solution would address their prior concerns. Because of a proposed change in the zoning ordinance, however, they declined to take any action concerning the building permit, citing RSA 156:3-a.

Mr. Goldman met again with the board on December 23, to attempt to persuade them that RSA 156:3-a was not applicable and that his request for a building permit was an ongoing process not affected by the posting of a proposed zoning amendment. The board rejected the plaintiff's argument.

Mr. Goldman then filed a petition for rehearing with the ZBA and on February 2, 1982, the ZBA held a public hearing to reconsider his appeal. He presented a revised parking plan and testimony by a water slide expert. After Selectman Hounsell raised a question as to the legality of the ZBA's hearing new evidence, the ZBA reaffirmed its decision to uphold the selectmen's denial of Mr. Goldman's building permit.

The first issue we decide is whether there was sufficient evidence of bad faith to justify an award of attorney's fees to the plaintiff.

In *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977), we held that an exception to the general rule that parties pay their own counsel fees exists "where an individual is forced to seek judicial assistance to secure a clearly defined right" if bad faith can be established. *Id.* at 691, 377 A.2d at 619.

The master found several examples of bad faith on the part of the defendant. Chief among them were the board of selectmen's repeated use of delaying tactics to avoid granting a building permit to Mr. Goldman until a zoning ordinance could be passed prohibiting water slides in the town of Conway. Initially, the board tabled Mr. Goldman's request, supposedly in order to gauge the town's reaction to the slide by calling an unprecedented public hearing.

The board also voiced numerous objections to Mr. Goldman's plans, most of them concerning whether the use of the water slide would generate excessive automobile traffic.

When Mr. Goldman successfully resolved these issues by presenting alternative plans, however, other delaying tactics were employed. When Mr. Goldman filed an amended building permit application with the board after the ZBA suggested that he present an alternative plan for parking facilities, the board of selectmen refused to act on the request, citing RSA 156:3-a, which states that no permit shall be issued "where application for such permit is made *after* . . . the first legal notice of proposed changes in the zoning ordinance has been posted pursuant to the provisions of . . . RSA 31:63-a, if the proposed changes would, if adopted, justify refusal of such a permit." Although a notice of zoning amendment had been posted, at the time the selectmen refused to act under RSA 156:3-a, the proposed ordinance had not even been drafted. It was the selectmen themselves who initially suggested the proposed change. The selectmen incorrectly interpreted the statute so as to avoid granting the plaintiff a permit.

Second, the master found that two of the town officials acted in a dual capacity. Testimony at trial revealed that John Walsh, the assistant town manager, was biased against the construction of water slides in Conway. The Town of Conway contends that when Mr. Walsh's newspaper article appeared, he had ceased to have any official involvement in Mr. Goldman's application. Yet, Mr. Walsh conceded at trial that, as assistant town manager, it was improper for him to use his newspaper column to express his opinion on *any* subject which was involved in a pending official proceeding. The master found that Mr. Walsh's article entitled "Otto the Otter" was clearly a criticism of the plaintiff's project.

Also, Mr. Walsh was present at the joint meeting of the planning board, board of selectmen and other town officials held on December 10, 1981. He, along with Selectman Hounsell, was instrumental in pressing the planning board to submit a proposal for a change in the zoning ordinance concerning recreational or amusement parks, even though Mr. Saunders of the planning board stated that "there is insufficient time to get involved with such a proposal at this time." Mr. Walsh's participation at this joint meeting clearly indicates his continued participation in an official capacity in the making of decisions about Mr. Goldman's project.

The master also found that Police Chief John Lance acted in a dual capacity as neighbor of Funtown and as town administrator. Chief Lance presented a compilation of complaints by Funtown's

neighbors to the board of selectmen, many of which were found to be minor and groundless. The list, however, was submitted on official police department stationery, with a recommendation that the selectmen deny Mr. Goldman's application.

■■ If there is evidence upon which a trier of fact could reasonably find as he did, we will sustain the master's findings of fact. *McAllister v. Peerless Ins. Co.*, 124 N.H. 676, 679, 474 A.2d 1033, 1035 (1984). We hold that the master's finding that the Town of Conway acted in bad faith was reasonable, and that, therefore, attorney's fees should be awarded to Mr. Goldman.

■ The second issue raised by the Town of Conway on appeal is whether the evidence was sufficient to support the master's decision that a taking had occurred. We have held that not all regulation of land constitutes a taking requiring compensation. Zoning regulations which ". . . do not substantially destroy the value of an individual piece of property . . . " do not constitute a taking requiring compensation. *Burrows v. City of Keene*, 121 N.H. 590, 598, 432 A.2d 15, 19–20 (1981). On the other hand, ". . . arbitrary or unreasonable restrictions which substantially deprive the owner of the 'economically viable use of his land' in order to benefit the public in some way constitute a taking . . . ." *Id.*, 432 A.2d at 20. The question is one of degree and its resolution is governed by no set test. Factual differences in each case will affect the determination of whether a compensable taking has occurred. *Id.* We must decide whether ". . . the denial of use is substantial and is especially onerous [.]" *Id.* If it is, then a taking occurs. *See Claridge v. N.H. Wetlands Bd.*, 125 N.H. 745, 485 A.2d 287 (1984) (no taking where denial of permit to place fill on property left land with some economic value and burden on owner was not unreasonably onerous); *State Wetlands Bd. v. Marshall*, 127 N.H. 240, 500 A.2d 685 (1985) (same, discussing *Claridge*).

When Mr. Goldman purchased the Funtown property, the construction of the water slide was considered central to the future economic success of the recreational facility. Financial statements prepared by Mr. Goldman's accountants indicated that the water slide would generate a minimum of forty percent of all profits earned at Funtown.

Mr. Goldman, however, deferred construction of the water slide on two different occasions; once in 1979 because he was concerned about whether an interim zoning ordinance might affect his project, and again in 1980, for business reasons. He was, however, finally ready to build the slide when Mr. Walsh visited his property in the summer of 1981.

The Town of Conway argues that the court made a finding of fact that the Funtown property has a multitude of potential business opportunities which might be conducted there and that the plaintiff has made "full and complete use" of its property for more than five years.

Although plaintiff may not have made as complete a use of his property as he could have wished, the value of his property was not substantially destroyed, in that he was able to continue operating the skating rink, miniature golf course and other facilities at Funtown. Since the denial of use was neither "substantial" nor "especially onerous," *Burrows*, 121 N.H. at 598, 432 A.2d at 20, we conclude that no taking of plaintiff's property occurred, and therefore plaintiff has no right to compensation.

*Affirmed in part and reversed in part.*

JOHNSON, J., did not sit; the others concurred.