Carroll
No. 85-061

ROCKHOUSE MOUNTAIN PROPERTY
OWNERS ASSOCIATION, INC. & a.

v.

TOWN OF CONWAY & a.

January 6, 1986

594

*Cooper, Fauver & Deans P.A.*, of North Conway (*Randall F. Cooper* on the brief and orally), for the plaintiffs.

*Upton, Sanders & Smith*, of Concord (*Gilbert Upton* and *Russell F. Hilliard* on the brief, and *Mr. Hilliard* orally), for the defendant Town of Conway.

SOUTER, J. This is an appeal from the superior court's dismissal of three claims for relief: (a) a claim for damages alleging that the defendants' refusal to lay out certain roads infringed the plaintiffs' rights to the equal protection of the laws, as guaranteed by the State Constitution; (b) a claim for damages alleging that the refusal to lay

out the roads adversely affected the value of the plaintiffs' properties and was therefore a denial of due process of law, as guaranteed by the State Constitution; and (c) a claim that the plaintiffs were entitled to a writ of mandamus ordering the defendants to lay out the roads. We affirm.

The plaintiffs are an incorporated association of owners of lots in a Conway subdivision known as Rockhouse Mountain, together with individual property owners. We do not understand that the association asserts any rights independently of those claimed by the individual plaintiffs, and in this opinion our references to the plaintiffs will be to all of the individual property owners. The defendants are the Town of Conway acting through its selectmen, together with three selectmen in their official and individual capacities.

In 1971, the town's planning board approved plans for the subdivision, although the subdivision's rights of way as planned and constructed did not meet town road standards. Thereafter, the individual plaintiffs' predecessor in title, Great Northern Land Corporation, sold lots in the subdivision, subject to a covenant requiring lot owners to pay charges for water and the costs of right of way maintenance for as long as Great Northern chose to provide them. Great Northern stopped maintaining the rights of way in 1980, and the plaintiffs allege that they have seriously deteriorated since then.

In 1980, some of the plaintiffs petitioned the Conway selectmen under RSA 52:1, I (Supp. 1983) to establish a village district with power to lay out roads over the existing rights of way and to maintain them. The selectmen tabled this petition with the suggestion that the petitioners explore the possibility of joinder with an existing village district serving a related subdivision in the contiguous town of Madison. In October 1981, property owners in each subdivision petitioned their respective selectmen to establish such an expanded village district. After public hearing, however, the selectmen took no action, and proposed that the Rockhouse Mountain landowners seek some other way to provide public layout and maintenance of roads. The selectmen specifically suggested that the property owners consider RSA 231:28 as a basis for petitioning the selectmen to lay out town roads over the existing private rights of way, subject to betterment assessments against the abutting owners to pay for the cost of necessary improvements.

In August 1982, the owners did petition the Conway selectmen, with two requests. First, they petitioned the town under RSA 231:8 to lay out town roads over all rights of way in the subdivision, without cost to the abutting owners. Alternatively, they requested road layouts over the subdivision's two principal thoroughfares, subject to

betterment assessments against the abutters under RSA 231:28. In September 1982, the selectmen denied each request, stating in effect that the existing ways did not meet town road specifications, and that the cost of betterment assessments to improve them to satisfy town standards would be disproportionate to any value that the abutters would thereby receive.

A year later, in September 1983, some of the property owners filed a new petition seeking the layout of 2,500 feet of one of the principal thoroughfares, known as Brenner Drive, subject to betterment assessments. In November, the selectmen denied the petition and gave as reasons, *inter alia*, that Brenner Drive was a dead-end way with only four houses and that the burden of any betterment assessments would be substantial. The owners moved for reconsideration, which the selectmen denied in December 1983, with a further statement of reasons: the obligation to maintain and plow the road would be a burden to the town; the petitioners paid only .5 percent of total local taxes; the proposed road would benefit only four or five houses, none of which was owned by a year-round resident; and the cost of a betterment assessment would be both burdensome to the abutters and disproportionate to the value they would receive.

On March 1, 1984, the plaintiffs filed the present petition, containing four counts. The first two counts requested the superior court to exercise its jurisdiction under RSA chapter 231, to lay out roads when town selectmen have failed or refused to do so. The plaintiffs purportedly rely on RSA 231:34 in seeking the superior court's layout of a town road over the 2,500 feet of Brenner Drive subject to a betterment assessment; and they rely on RSA 231:38 (Supp. 1983) in asking the layout of town roads in the subdivision generally, without cost to abutters. These two requests are pending in the superior court and are not subjects of this appeal.

As a third count, the petition alleged that in refusing to lay out the roads the selectmen discriminated against the plaintiffs as a class because of their seasonal residence. The plaintiffs claim that such discrimination violated guarantees of equal protection of the laws provided by the State and National Constitutions. As a fourth count, the petition asserted that the refusals by the selectmen had delayed the construction of adequate roads and that the delay amounted to a deprivation of property rights, in violation of due process guaranteed by both constitutions.

The plaintiffs sought relief in three forms. As noted above, they asked the superior court to exercise its statutory jurisdiction to lay out the desired roads, following the selectmen's refusal to do so.

They also sought money damages for the alleged violations of the constitutions, resting their federal damage claims on 42 U.S.C. § 1983. Finally, they requested a writ of mandamus, ordering the selectmen to lay out the roads.

The defendants moved to dismiss the third and fourth counts, and the related claims for money damages, for failure to state causes of action upon which the requested relief might be granted. The plaintiffs later took voluntary nonsuits of their claims insofar as they were based upon the Constitution of the United States under 42 U.S.C. § 1983, in the light of recent opinions of the United States Court of Appeals for the First Circuit declining to recognize such actions under § 1983. *See, e.g., Alton Land Trust v. Town of Alton*, 745 F.2d 730 (1st Cir. 1984); *Cloutier v. Town of Epping*, 714 F.2d 1184 (1st Cir. 1983); *Chiplin Enterprises, Inc. v. City of Lebanon*, 712 F.2d 1524 (1st Cir. 1983); *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.), *cert. denied*, 459 U.S. 989 (1982).

After a hearing before a Master (*Charles T. Gallagher*, Esq.), the Superior Court (*Temple*, J.) dismissed the third and fourth counts and the claims for damages insofar as they were based on State constitutional grounds, and also dismissed the request for mandamus. This appeal followed.

We will consider first the dismissal of the claim for money damages sought as redress for the equal protection violation alleged in the third count. The plaintiffs argue that an action for damages should lie against a municipality and its officials when those officials have acted under color of law and with discriminatory intent to subject any person to a denial of the equal protection of the laws, as guaranteed by part I, article 12 of the Constitution of New Hampshire. *See State v. Pinsince*, 105 N.H. 38, 41, 192 A.2d 605, 607 (1963); *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). They thus urge this court to create a so-called constitutional tort, in the manner exemplified by the United States Supreme Court's recognization of a right to damages for a fourth amendment violation, committed by federal agents. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

 As in any case in which we are asked to recognize a new cause of action, it is a question of policy whether it would be wise to provide the relief that the plaintiffs seek. *See, e.g., Siciliano v. Capitol City Shows, Inc.*, 124 N.H. 719, 725, 475 A.2d 19, 21–22 (1984). Reaching an answer to this question requires two quite separate steps, for we must determine whether the interest that the plaintiffs assert should receive any legal recognition and, if so,

whether the relief that the plaintiffs request would be an appropriate way to recognize it. *See Bivens v. Six Unknown Fed. Narcotics Agents, supra* at 398–411 (Harlan, J., concurring); *cf. Bivens v. Six Unknown Named Agents of Fed. Bur. of Nar.*, 409 F.2d 718, 722–23 (2d Cir. 1969) (only when constitutional provision would otherwise be a mere form of words is it appropriate for judiciary to fashion remedy for violation of that provision), *rev'd*, 403 U.S. 388 (1971); *see generally* Katz, *The Jurisprudence of Remedies: Constitutional Legality and the Law of Torts in Bell v. Hood*, 117 U. PA. L. REV. 1 (1968).

The fact that the interest said to have been infringed here has constitutional status takes us through the first step; it demonstrates that a denial of equal protection demands some vindication in the law. But that constitutional recognition does not carry the plaintiffs through the second step; it does not tell us whether a damages remedy modeled on tort law would be an appropriate way to redress the denial.

In approaching the second step in this particular case, it is well to take account of the essential feature of every equal protection violation: the harm results not simply from the way the plaintiff is treated, but from the contrast between the treatment of the plaintiff and the treatment of others like the plaintiff. Thus an equal protection violation must be identified by reference to this contrast of respective treatment rather than by reference merely to particular acts, like wounding with a bullet or defaming with a lie. There is therefore virtually no limit to the variety of activities that can provide the context in which an equal protection claim can at least be raised. Because this potential variety of contexts has no exact analogue in the traditional law of torts, *see* Whitman, *Constitutional Torts*, 79 MICH. L. REV. 5, 14 (1980), we should be wary of thinking abstractly about the suitability of a tort remedy to enforce the obligation of equal protection. In our consideration of this case, therefore, we will confine our thinking specifically to the context of the citizen's interest in equal protection when the government exercises its discretion over the layout of public roads.

■■ In this context, two reasons persuade us that a damages remedy would not be appropriate relief for the violation that the plaintiffs allege. The first reason is our conclusion that the existing statutory law provides an adequate remedy for the citizen who is injured by the refusal of the selectmen to lay out roads, whether that refusal reflects mere error or an intent to discriminate. In either case, the result of the refusal to lay out the road is not an injury that

can never be undone by the judiciary, in which case damages might be the only civil redress possible. Rather, the selectmen's refusal to act can be undone at the behest of an aggrieved party who appeals to the superior court under RSA 231:34.

The superior court is required to give *de novo* consideration to the request for the road, and the so-called appeal is in reality a transfer to the court of all issues raised by a request for layout. *Caouette v. Town of New Ipswich*, 125 N.H. 547, 553, 484 A.2d 1106, 1111 (1984). The court's consideration of the petition must parallel the selectmen's consideration, *Grossman v. Town of Dunbarton*, 118 N.H. 519, 523, 389 A.2d 1385, 1387 (1978), and the court's response is in fact an independent determination of the occasion, or appropriateness, of laying out a road as requested. The appeal procedure is a practical guarantee that a petitioner's request will be considered on its merits in a forum that is free from local prejudice.

In the present case, the defendants agree that such an appeal will lie, whether the layout was originally requested as subject to a betterment assessment under RSA 231:28 or was requested at no expense to the petitioners, under RSA 231:38. Thus, such an appeal is available, and the plaintiffs are actually pursuing it.

While the statutory remedy does not provide any additional recompense when the denial has resulted from unconstitutional conduct rather than mere error, we do not find it inadequate for that reason. The justification advanced for a further damages action is the feeling that the unconstitutional nature of the conduct should be reflected in additional recompense. We frankly fear, however, that provision of a supplemental cause of action to provide an additional remedy for a constitutional violation in these circumstances would inevitably lead to the conversion of every road dispute into a constitutional tort action. In the charged atmosphere of local politics, few are suspected of benignly motivated error. *See, e.g., Creative Environments, Inc. v. Estabrook*, 680 F.2d at 822. Unlike the statutory appeal for layout, such a damages action would carry a right to jury trial and, hence, to a trial separate from the layout appeal. The likely multiplication of litigation resulting from a local squabble would be too high a price to pay for such a supplemental cause of action. *But see Funtown USA, Inc. v. Town of Conway*, 127 N.H. 312, 499 A.2d 1337 (1985) (where an individual is forced to seek judicial assistance to secure a clearly defined and established right, an award of counsel fees on the basis of bad faith is appropriate).

The second reason for holding that a remedy in damages would be inappropriate is the incompatibility of that remedy with the limited municipal and official immunity that our cases have recognized as

desirable. In *Merrill v. Manchester*, 114 N.H. 722, 332 A.2d 378 (1974) we held that a town is immune from tort liability for acts performed in the exercise of a legislative or judicial function, or of an executive or planning function involving basic policy decisions requiring the exercise of a high degree of discretion. *Id.* at 729, 332 A.2d at 383. The selectmen's exercise of layout jurisdiction would qualify for immunity whether it be classified as judicial or executive.

Historically, in fact, highway layout has been classified as a judicial determination, *Spaulding v. Groton*, 68 N.H. 77, 79, 44 A. 88, 89 (1894), a classification that is at least consistent with the statutory scheme that vests the superior court with jurisdiction to lay out highways on *de novo* appeal. In any event, the power to reach a reasonable accommodation of private and public interests in any controversial request for layout requires the exercise of a high enough order of discretion to justify legal immunity, even if the decision be regarded as the exercise of an executive or planning function.

The policy favoring this immunity is familiar. Judicial and other highly discretionary responsibilities require an independence that could not survive threatened and litigated tort claims. The availability of actions for damages would "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand, J.), *cert. denied*, 339 U.S. 949 (1950). We recognize, of course, that the possibility of abuse is the price that must be paid for any immunity. But our recent review of governmental immunity convinces us that there is no justification for eroding the general rule announced in *Merrill supra, see Opinion of the Justices*, 126 N.H. 554, 493 A.2d 1182 (1985), and for that reason we cannot recognize the cause of action that the plaintiffs urge upon us.

Although this resolves the first issue, before leaving it we should take note of several problems that would have arisen if we had not found the statutory remedy adequate or the general immunity doctrine applicable. The plaintiffs have made no claim that any statute, ordinance, or statement of policy required or authorized the discrimination that is said to be the source of the complaint. Before the plaintiffs could have prevailed, therefore, we would have been required to determine the quantum or extent of official action that would be necessary to amount to action under color of law, and hence be constitutionally tortious for purposes of an action for damages. *See Monroe v. Pape*, 365 U.S. 167, 193 (1961) (Harlan, J., concurring). Likewise, we would have been required to determine whether a municipality should be bound under *respondeat superior*,

or whether something more should be required before the municipality would also be liable in damages. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690–91 (1978).

As it is, these problems need not detain us, and we turn to the second question raised in this appeal, whether the refusal of the selectmen violated State due process, for which a tort action for damages should be recognized.

Although the plaintiffs have invoked due process, this language does not fit the facts pleaded. The plaintiffs make no claim that the selectmen denied them procedural due process, and it is apparent that the nub of their position is that the actions of the selectmen have amounted to an inverse condemnation of their property, for which the government must pay compensation under part I, article 12 of the State Constitution. They argue that the delay in extending town roads and other utilities to this property has resulted in lower values than their properties would otherwise have enjoyed, and on this reasoning they claim to be entitled to compensation under principles summarized in *Burrows v. City of Keene*, 121 N.H. 590, 432 A.2d 15 (1981).

■ *Burrows* is not on point, however. Although we held there that public regulation can so limit the legitimate use of property as to amount to a compensable taking, the plaintiffs' claim goes beyond *Burrows* in two respects. First, of course, the plaintiffs seek damages from individual officials as well as from the government or public that was allegedly benefited. More important, the plaintiffs seek to hold the defendants liable for a failure to take discretionary affirmative action that would arguably have increased the value of their property, rather than for the enactment or erroneous imposition of regulations that decreased the value by limiting the owners' traditional rights to use it. Thus the actions complained of are in no sense a taking within the meaning of *Burrows*. *See Funtown USA, Inc. v. Town of Conway*, 127 N.H. 312, 499 A.2d 1337.

■ Since there is no taking, any other theory of damages would run squarely up against the considerations of policy that we emphasized in holding that damages were not an appropriate remedy for an equal protection violation in this context. While further time will admittedly be consumed in litigating the requests for layouts addressed to the superior court, neither article 12, nor any other constitutional provision, guarantees the instantaneous correction of errors. The passage of time required for procedural due process does not give rise to a right to damages. *See Alton Land Trust v. Town of Alton*, 745 F.2d at 733.

This brings us to the final issue, whether the request for a petition for mandamus was properly dismissed. We believe that it was.

■■ Mandamus is an extraordinary writ that may be addressed to a public official, ordering him to take action, and it may be issued only when no other remedy is available and adequate. *See Guarracino v. Beaudry*, 118 N.H. 435, 437–38, 387 A.2d 1163, 1165 (1978); *Brouillard v. Governor and Council*, 114 N.H. 541, 542–44, 323 A.2d 901, 903–04 (1974). When an official is given discretion to decide how to resolve an issue before him, a mandamus order may require him to address the issue, but it cannot require a particular result. *Id.* at 544, 323 A.2d at 903; *but see Guarracino v. Beaudry, supra* at 437, 387 A.2d at 1165 (writ of mandamus will issue to overturn the discretionary performance of an official function if exercised "arbitrarily or in bad faith").

■■ These principles preclude mandamus relief in this case. As we have noted before, the decision to lay out roads is subject to reasonable discretion. *Grossman v. Town of Dunbarton*, 118 N.H. at 523, 389 A.2d at 1387. Therefore mandamus would be appropriate only if the selectmen had entirely failed or refused to address the plaintiffs' requests for layout. The plaintiffs do not claim the selectmen failed to address the issue, however. They claim that the selectmen addressed the issue but reached the wrong result. Therefore they seek a writ of mandamus ordering the selectmen to reach the right result by laying out the desired roads. This is exactly what a mandamus order cannot require, and it would have been patent error to grant the plaintiffs' request to issue the writ.

*Affirmed.*

JOHNSON, J., did not sit; the others concurred.