Strafford
No. 91-177

### CITY OF DOVER

v.

### DONALD C. KIMBALL & a.

November 25, 1992

442

*Scott E. Woodman*, of Dover, and *Shaines & McEachern, P.A.*, of Portsmouth (*Mr. Woodman* and *John H. McEachern* on the brief, and *Mr. McEachern* orally), for the plaintiff.

*Mulvey, Noucas & Cornell, P.A.*, of Portsmouth (*James G. Noucas, Jr.* on the brief and orally), for the defendants Donald and Marjorie Kimball.

*Wholey & Pelech*, of Portsmouth (*Bernard W. Pelech* on the brief and orally), for the defendants Miriam and Stanley Allen.

THAYER, J.   The Superior Court (*Temple*, J.) awarded the defendants attorney's fees, but denied their claim for damages, based on the bad faith conduct of the Dover Planning Board (the board). Because the record does not support the finding of bad faith, we reverse the award of attorney's fees and affirm the denial of the defendants' claim of damages against the city.

Donald and Marjorie Kimball, two of the defendants, owned a parcel of land on Dover Point Road in Dover. They conveyed a portion of the land to Edmond Daigle and Ann Shine in 1985 without first obtaining subdivision approval from the board. The lot retained by the

Kimballs will be referred to as Lot 1; the lot sold to Daigle and Shine will be referred to as Lot 2. Lot 1 was a nonconforming parcel under Dover zoning regulations and could not be used unless it was combined with an adjacent lot. The Kimballs were aware that subdivision approval was necessary when they conveyed the parcel to Daigle and Shine and knew that, because they had violated RSA 676:16, they were subject to a $500 civil penalty.

The remaining defendants, Miriam and Stanley Allen, owned the lot adjacent to the Kimballs' Lot 1. Their lot will be referred to as Lot 3. In January 1986, the Kimballs entered into a purchase and sale agreement to sell Lot 1 to the Allens with the understanding that Lot 1 and Lot 3 would be combined with city approval. Soon thereafter, the Kimballs informed the Dover planning department that they had illegally subdivided their land in 1985 with the conveyance to Daigle and Shine. The defendants were advised by the city on how to bring Lots 1 and 2 into compliance with the city's code.

The Kimballs and the Allens were advised to submit an application for a minor subdivision, which they did in April 1986. Some time later, they were advised to refile their application as a lot line adjustment, which they did in June 1986. The application was rejected when Daigle and Shine refused to sign it because a boundary dispute had developed. The boundary dispute arose from the fact that the deed from the Kimballs to Daigle and Shine specified 105 feet along the Little Bay boundary of Lot 2, but the survey prepared for the application showed 97.11 feet. The attorney for Daigle and Shine informed the director of the planning department of the basis for the dispute. On August 22, 1986, the Kimballs, the Allens, and Daigle and Shine all met on the property and agreed to a boundary line between Lots 1 and 2.

On September 5, 1986, the director of the planning department was informed that the boundary dispute had been settled and another application for a lot line adjustment was submitted by the Kimballs, the Allens, and Daigle and Shine. The board rejected the application on September 30, 1986, because the regulations for both lot line adjustments and subdivisions required the entire perimeter of the lots to be certified and one lot line on the plat had not been certified by the surveyor. The uncertified lot line was not the common boundary line between Lots 1 and 2, the location of which the private parties had agreed upon; rather, it was the boundary line between Lot 2 and the lot to the south that was not certified.

Daigle and Shine revoked their acceptance of the August 22 boundary settlement and refused to sign any more applications,

which the defendants needed to obtain board approval before the conveyance of Lot 1 to the Allens could occur. A flurry of litigation among the private parties soon followed. Additionally, in February 1987, the city filed suit to enjoin the Kimballs and the Allens from transferring or using Lot 1 because it was a nonconforming lot created by an illegal subdivision. The city also sought to recover civil penalties and attorney's fees. In March 1987, a temporary hearing was held, and the Superior Court (*O'Neil*, J.) ordered the city to place the defendants' application on the next board agenda and to consider the application without the signatures of Daigle and Shine. The city placed the application on its April 1987 agenda, but the Kimballs withdrew the application because other litigation was ongoing. The application was ultimately resubmitted in October 1987 and approved on November 23, 1987.

In the course of the litigation among the private parties, Daigle and Shine were deposed. They revealed that board member Harold Preston had gone to their property on September 28, 1986, to investigate the application that was to be heard by the board on September 30, 1986. The defendants alleged that on that day Preston told Daigle and Shine that (1) their warranty deed entitled them to 105 feet of frontage on Little Bay; (2) they did not need a lawyer to resolve their boundary dispute; (3) they were getting "screwed"; (4) that he (Preston) would vote against the application; and (5) that the board would not accept the application. Upon receipt of this information, the defendants filed counterclaims against the city seeking damages and attorney's fees based on Preston's conduct and the board's alleged wrongful denial of the September 30, 1986 application. The city maintains that it acted in good faith at all times and that it had a reasonable claim under the law to act as it did.

In its order of March 12, 1991, the superior court ruled that Preston's actions, just prior to the September 30, 1986 hearing, and his conduct during the hearing, constituted bad faith and that the planning board as a whole acted in bad faith in not accepting the application in spite of its "deficiencies." The defendants were awarded attorney's fees pursuant to *Harkeem v. Adams*, 117 N.H. 687, 377 A.2d 617 (1977), which allows a party to recover attorney's fees if bad faith is established and the party "is forced to seek judicial assistance to secure a clearly defined and established right." *Harkeem*, 117 N.H. at 691, 377 A.2d at 619. The defendants also sought damages for the delays caused by the board's failure to accept the September 1986 application, but the court dismissed their counterclaim for failure to state a cause of action. The Kimballs were assessed a

$500 penalty for violating the subdivision regulations. All parties subsequently filed motions for reconsideration that were denied by the trial court. The city appealed the award of attorney's fees, arguing that because the defendants did not "prevail" in the action, the court was without authority to award attorney's fees. The defendants cross-appealed the denial of their general damages claim.

Although the city argues that the defendants are not entitled to attorney's fees because the defendants were not the prevailing parties, we need not address this issue because we determine that there was no bad faith and, therefore, the award of attorney's fees was improper. Likewise, our holding that the city did not act in bad faith disposes of the defendants' claim that they are entitled to an award of general damages against the city because damages against a municipality are allowed only upon a showing of bad faith. *See Win-Tasch Corp. v. Town of Merrimack*, 120 N.H. 6, 11, 411 A.2d 144, 147 (1980).

In *Keenan v. Fearon*, 130 N.H. 494, 543 A.2d 1379 (1988), we recognized a court's power to award attorney's fees "in any action commenced, prolonged, required or defended without any reasonable basis in the facts provable by evidence, or any reasonable claim in the law as it is, or as it might arguably be held to be." *Id.* at 502, 543 A.2d at 1383. The standard of review applied to the award of attorney's fees is whether the trial court abused its discretion. *Maguire v. Merrimack Mut. Ins. Co.*, 133 N.H. 51, 54, 573 A.2d 451, 453 (1990). "To constitute an abuse, reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party." *Id.* at 56, 573 A.2d at 454 (quotation omitted). In applying this standard, we "look[] for some support in the record for a trial court's decision concerning attorney's fees." *Id.* at 55, 573 A.2d at 453.

We first address the defendants' argument that Preston should have been disqualified from hearing the September 30, 1986 application because RSA 673:14, I (Supp. 1991) imposes a "juror standard" on a planning board member participating in any question that the board hears in a quasi-judicial capacity. *See Winslow v. Holderness Planning Board*, 125 N.H. 262, 266–67, 480 A.2d 114, 115–16 (1984) (statute provides that board acts in judicial capacity but court distinguishes judicial from quasi-judicial action). The juror standard provides that "[i]f it appears that any juror is not indifferent, he [or she] shall be set aside on that trial." RSA 500-A:12, II. The defendants argue that Preston's investigation and communications with Daigle

and Shine about the different descriptions contained in their deed and the survey submitted by the Kimballs demonstrated that he was "not indifferent" and, therefore, that he prejudged the application.

Planning board members, unlike jurors sitting on a trial, are "authorized to enter upon any land and make such examinations and surveys as are reasonably necessary . . . ." RSA 674:1, IV. In addition, "[r]easons for disqualification do not include . . . knowledge of the facts involved gained in the performance of the member's official duties." RSA 673:14, I (Supp. 1991). The trial court found that on September 28, 1986, Preston told Daigle and Shine that "they were getting screwed; . . . he (Harold Preston) was going to vote against the application; and . . . the Board would not accept the application on September 30, 1986." The finding of bad faith and the defendants' argument that their application was prejudged rests on this exchange.

In *Winslow v. Holderness*, we held that a planning board member prejudged a case before the planning board where he made comments in favor of a project at a public hearing several months before he became a member of the board. *Winslow*, 125 N.H. 262, 268, 480 A.2d 114, 117. In the *Winslow* decision, we cited *Cinderella Career and Finishing Schools, Inc. v. F.T.C.*, 425 F.2d 583 (D.C. Cir. 1970), which stands for the proposition that a government official may not make speeches before a hearing has been held that give the appearance that the case has been prejudged. *Id.* at 590–91.

While these two cases provide clear examples of prejudgment on the part of a government official, we find the circumstances of this case quite different. Preston spoke solely with one of the applicants and gave his opinion on the application in response to repeated queries from Daigle, who testified that on one occasion he saw Preston at a nearby marina and called him over to the Daigle and Shine lot to converse. Daigle also testified that he initiated at least three phone conversations with Preston and "pestered" Preston because he felt overwhelmed by all the "legal stuff."

■ ■  We have previously reminded municipalities that "it is their function to provide assistance to all their citizens" seeking approval under zoning ordinances. *Carbonneau v. Town of Rye*, 120 N.H. 96, 99, 411 A.2d 1110, 1112 (1980). Consistent with this admonishment, we hold that a planning board member's discovery of obvious inconsistencies in submitted documents and a subsequent statement to an applicant explaining why such inconsistencies will preclude approval of the application does not show that the applica-

tion has been prejudged. Daigle sought Preston out, asked for his impressions, and asked for advice. The Kimballs and the Allens seek to have this court hold that Preston acted in bad faith by responding to the queries of their co-applicant. This we will not do. Municipal officials must be free to advise applicants of whether their applications conform to statutory requirements and make suggestions on how to bring the applications into compliance. If an application does not conform and will not be accepted, the officials should be able to communicate this information without being accused of prejudging the application.

Having addressed the prejudgment argument based on Preston's comments prior to the September 30, 1986 hearing, we now turn to the superior court's ruling that Preston's conduct during the hearing constituted bad faith. The first comment Preston made at the hearing related to the fact that the surveyor did not certify all the boundary lines for Lot 2. He next discussed the inconsistency between the deed giving Daigle and Shine 105 feet along Little Bay and the survey plat showing only 97.11 feet. He also noted that in an earlier application another map prepared by the same surveyor represented the lot to the south of Lot 2 as having 84.37 feet along Little Bay, but the September application showed only 75.5 feet. Preston concluded his comments by saying that he felt sorry for Daigle and Shine. We fail to see any basis for attributing bad faith to Preston for comments that accurately reflected both the record before him and a reasonable basis upon which the application could have been rejected.

■ The defendants' reliance on *Funtown v. Town of Conway*, 127 N.H. 312, 499 A.2d 1337 (1985), is misplaced. In *Funtown*, the town repeatedly used delaying tactics to avoid hearing the merits of the application; incorrectly interpreted a statute in order to avoid granting the application; and at a hearing, informed the applicant's attorney that the application would be considered at another time but then rejected the application after the attorney left. *Id.* at 314–16, 499 A.2d at 1339–40. The defendants' reliance on *Funtown* is of no avail because the conduct of Preston and the Dover Planning Board did not indicate any attempt to purposely interfere with, or delay action on, the application.

■ Finally, the superior court found that the board acted in bad faith in not accepting the defendants' application on the condition that the deficiencies be cured because the board had accepted other applications with the same deficiencies. The defendants' application,

however, was significantly different from others presented to the board. The Kimballs had already conveyed a parcel to Daigle and Shine, they had accepted the proceeds of the transaction, and Daigle and Shine had recorded their deed. This course of events caused two statutory violations. *See* RSA 676:16 (prohibiting transfer of land without subdivision approval where the municipality has subdivision regulations); RSA 676:18 (providing that a register of deeds who files or records a plat of a subdivision without the approval of a planning board shall be guilty of a misdemeanor). Because the defendants' prior conduct violated statutory mandates, the board was well within its authority to rigorously require compliance with the subdivision regulations.

In *Harkeem v. Adams*, 117 N.H. 677, 387 A.2d 617, we recognized an exception to the general rule that each party is responsible for its own attorney's fees. "Where an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have been freely enjoyed without such intervention, an award of counsel fees on the basis of bad faith is appropriate." *Id.* at 691, 377 A.2d at 619. The defendants' rights to use and sell their property are clearly defined and established. These rights, however, are clearly defined by the land use regulations in effect in the municipality in which the land is located. These rights cannot be freely enjoyed until the landowners comply with the applicable regulations. Had the Kimballs simply complied with the regulations in 1985 when they sold Lot 2 to Daigle and Shine, there would have been no need for this litigation. The Dover Planning Board's rejection of the defendants' application was not in bad faith; rather, it was an effort to protect all the parties involved by verifying the boundary lines between every lot. The city had a reasonable claim in the law in its enforcement of the subdivision regulations. *See Keenan v. Fearon*, 130 N.H. at 501–02, 543 A.2d at 1383. Accordingly, it was an abuse of discretion for the trial court to award attorney's fees. *See Treisman v. Town of Bedford*, 135 N.H. 573, 575, 607 A.2d 950, 951 (1992).

■ We have reviewed the trial judge's findings of fact in support of the ruling that the Dover Planning Board acted in bad faith and conclude that they are insufficient to support such a finding. Accordingly, we reverse the award of attorney's fees to the defendants and affirm the denial of their claim for damages.

*Affirmed in part; reversed in part.*

All concurred.