Sullivan
No. 2003-791

## TOWN OF ACWORTH & a.

v.

## FALL MOUNTAIN REGIONAL SCHOOL DISTRICT

Argued: July 15, 2004
Opinion Issued: September 2, 2004

*Stebbins Bradley Harvey & Miller, P.A.*, of Hanover (*David H. Bradley* on the brief and orally), for the petitioners.

*Sulloway & Hollis, P.L.L.C.*, of Concord (*Edward M. Kaplan* and *Sara S. Murdough* on the brief, and *Mr. Kaplan* orally), for the respondent.

NADEAU, J. The petitioners, the Towns of Acworth, Alstead and Langdon, appeal from the Superior Court's (*Morrill*, J.) denial of their petition to declare an amendment to the articles of agreement of the respondent, the Fall Mountain Regional School District (FMRSD), unlawful. We affirm.

The FMRSD is a cooperative school district consisting of the towns of Acworth, Alstead, Langdon, Charlestown and Walpole. It was formed in 1966 pursuant to Laws 1963, 258:1, now codified at RSA 195:18 (Supp. 2003), which governs the organization of cooperative school districts formed after June 30, 1963. *See Winnacunnet Coop. Sch. Dist. v. Town of Seabrook*, 148 N.H. 519, 521 (2002).

The challenged amendment to the FMRSD's articles of agreement, the "Unified Article," reapportions the FMRSD's operating and capital expenses among member towns. Before the Unified Article the FMRSD's articles of agreement apportioned operating expenses based upon average daily pupil membership, and allocated capital expenses based upon

average daily pupil membership and equalized valuation. Under the Unified Article all operating expenses of the high school continue to be apportioned annually based upon average daily pupil membership. After fiscal year 2002-2003 (the first year of operation under the Article), however, most operating expenses for kindergarten through eighth grade (K-8) are assigned to each member town according to the number of K-8 pupils residing there; all K-8 capital expenses are assigned to the member towns that incurred them. As the business administrator for the FMRSD testified, for most K-8 expenses the Unified Article obliges member towns to pay for what they use.

The Unified Article defines capital expenses as "the acquisition of land, the construction of new schools or additional square footage added to existing schools." *See* RSA 195:18, III(g). The Unified Article classifies operating expenses as "direct" or "shared." Direct costs are "directly attributable" to the member towns. The Unified Article lists shared costs under one of six different formulas or "methods" for apportioning them.

The Unified Article requires the FMRSD business administrator, superintendent and school board to certify to the State Department of Education (DOE) "that the proposed budget for each ensuing fiscal year has been apportioned in compliance with the methods agreed to in the[] Unified Article[]." Additionally, pursuant to the Unified Article, the school board and school administration annually must: (1) "[r]eview all line items to determine if they will need to be deleted or moved into another method"; (2) "[a]dd any new line items to the budget and assign as appropriate"; and (3) "[a]djust apportionment percentages as appropriate" in three of the six apportionment methods.

The narrow issue before us is whether the Unified Article is lawful. To resolve this appeal, we must interpret the State's cooperative school district law, RSA chapter 195. As statutory interpretation involves a question of law, we review the trial court's decision *de novo. Craftsbury Co. v. Assurance Co. of America,* 149 N.H. 717, 719 (2003).

This court is the final arbiter of the legislature's intent as expressed in the words of the statute considered as a whole. *Steir v. Girl Scouts of the U.S.A.,* 150 N.H. 212, 214 (2003). We first examine the language of the statute, and where possible, ascribe the plain and ordinary meanings to the words used. *Id.* When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent. *Id.* We do not consider what the legislature might have said or add language that the legislature did not see fit to incorporate in the statute. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.*

■ The petitioners first argue that the Unified Article frustrates the purpose of RSA chapter 195. They assert that the law's "obvious purpose" was to "provide sufficient financial resources to support all the students in the cooperative and to insure that no individual school district has to rely on its own financial resources to provide education to its students." The Unified Article violates this purpose, they contend, because "with the exception of about 25% of the operating expenses for elementary students, the individual towns of Fall Mountain are in the same position financially with respect to their elementary students as they would be in if they had never joined the cooperative."

The petitioners misstate the law's purpose. The stated purpose of RSA chapter 195 is to "increase educational opportunities within the state by encouraging the formation of cooperative school districts." RSA 195:2, I(a) (1999). The legislature expected each cooperative school district to "[b]e a natural social and economic region," "[h]ave an adequate minimum taxable valuation," and "[h]ave a number of pupils sufficient to permit the efficient use of school facilities within the district and to provide improved instruction." *Id.* The petitioners do not assert that the Unified Article violates these legislative objectives.

The petitioners next argue that the Unified Article violates RSA 195:18, III(i). This provision requires a cooperative school district's articles of agreement to include "[t]he method by which the articles ... may be amended with approval of the board; except that no amendment may permit secession of territory." RSA 195:18, III(i). It also sets forth the procedure for reviewing a cooperative district's apportionment formulas:

The provisions adopted under either subparagraph (e) or (g) above may be subject to review pursuant to an article for that purpose duly inserted in the warrant for a district meeting which may be held at any time after the expiration of the 5-year period measured from the date of the first annual meeting. If the apportionment formula for a cooperative school district has been duly changed, the basis for the apportionment of all such costs may be subject to review pursuant to an article for that purpose duly inserted in the warrant for a district meeting which may be held at any time after the expiration of the 5-year period measured from the date of the meeting at which the last change was made to the cost apportionment. However, such provisions may be amended at any time in order to permit the enlargement of a cooperative school district or an increase in the number of grades for which the cooperative school district shall be responsible.

*Id.* Subparagraph (e) of RSA 195:18, III concerns "[t]he method of apportioning" a cooperative school district's operating expenses. Subparagraph (g) of RSA 195:18, III concerns "[t]he method of apportioning" a cooperative school district's capital expenses.

The petitioners rely also upon RSA 195:14, I(c) (1999), which requires the commissioner of revenue administration to certify "the total amount to be apportioned among the pre-existing school districts." They argue that the phrase "all such costs" in RSA 195:18, III(i) and the reference to the "total amount to be apportioned" in RSA 195:14, I(c) evinces legislative intent that *all* of a cooperative school district's operating and capital expenses be shared by all member towns pursuant to a set formula. The petitioners contend that because all K-8 capital expenses are borne by the member towns that incurred them and most K-8 operating expenses are assigned to individual member towns according to the number of resident pupils in those towns, the Unified Article does not "apportion" expenses according to a "formula." We disagree.

RSA chapter 195 does not define the terms "apportionment" as used in RSA 195:18, III(i), "apportioning" as used in RSA 195:18, III(e) and (g), or "apportioned" as used in RSA 195:14, I(c). When statutory terms are undefined, we ascribe to them their plain and ordinary meanings. *In the Matter of Blanchflower & Blanchflower*, 150 N.H. 226, 227 (2003). The plain and ordinary meanings of the word "apportion" are to "divide and assign in proportion," or to "divide and distribute proportionately," or to "allot." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 105 (unabridged ed. 2002). The Unified Article thus apportions all K-8 expenses. It divides and assigns capital expenses in proportion to how they were incurred. It divides and assigns most operating expenses in proportion to the resident pupil population in each member town. Accordingly, we cannot agree with the petitioners that the Unified Article fails to "apportion" K-8 capital and operating expenses. Nor do we agree that the Unified Article fails to set forth a method or "formula" for apportioning K-8 capital and operating expenses.

▪ We discern no statutory mandate that all member towns share *all* cooperative school district expenses. RSA 195:18, III(e) and (g) specifically permit cooperative school districts formed after June 30, 1963, "to devise their own allocation formulas." *Winnacunnet*, 148 N.H. at 528. These provisions require the articles of agreement of a cooperative school district formed after June 30, 1963, to include the method for apportioning these costs "among the several preexisting districts and the time and manner of payment of such shares." RSA 195:18, III(e), (g). These provisions do not compel member towns to share all costs.

The petitioners' reliance upon RSA 195:7 (1999) and RSA 195:8 (1999) is misplaced. As the petitioners concede, these statutes pertain to cooperative school districts organized before July 1, 1963, not to the FMRSD. Moreover, nothing in either statute requires member towns to share all of a cooperative school district's costs. RSA 195:7, I, states only that each member town must "pay its share of all capital outlay costs and operational costs" according to one of two formulas set forth in the statute or "[s]ome other formula" adopted by the cooperative school district. RSA 195:8 provides for review of "the basis for the apportionment of all such costs" every five years. Nothing in either statute prohibits a cooperative school district from adopting a formula that allots certain costs to certain towns.

The petitioners next fault the Unified Article because it is not "clear and complete" with respect to how to: (1) determine which costs are "direct" and which are "shared"; (2) apportion "shared" costs; and (3) apportion certain revenues and any year-end surplus. They intimate that because the Unified Article is not sufficiently specific, it is unconstitutional. They have not developed their constitutional argument adequately to warrant extended consideration, however. *See Allen v. State of N.H.*, 147 N.H. 243, 248-49 (2001).

We disagree with the petitioners that it is not possible to determine which costs are "direct" and which are "shared." To the contrary, the Unified Article specifically lists all shared costs. By necessity, then, direct costs are all costs that are not identified as shared costs. As the business administrator for the FMRSD testified:

> Q. And I assumed—and I think you confirmed my assumption— that if something is not on a shared list for the purposes of this article, it is a direct cost for the purpose of this article.
> A. Yes.
> Q. But there is nothing that tells me that in this article, is there?
> A. No, it's deductive.

We likewise disagree with the petitioners that it is not possible to determine how to apportion shared costs. The Unified Article lists six methods for apportioning shared costs. Under each method is a list of the costs to be apportioned using that method. For instance, "Method 2" apportions expenses for: junior high "B" team soccer coach, all district-wide junior high sports teams, student services coordinator, elementary guidance coordinator, itinerant teacher equipment, and information technology services texts, equipment and telephone expenses. This method apportions these expenses as follows: "1/9 Acworth, 1/9 Alstead, 1/3 Charlestown, 1/9 Langdon and 1/3 Walpole."

The petitioners have not cited any statutory authority for their assertion that a cooperative school district's apportionment formulas must specify how to apportion the revenues the petitioners identify and any year-end surplus. Moreover, we are not persuaded that the Unified Article is fatally unclear and incomplete because it contains ambiguities.

■ The petitioners next contend that the Unified Article violates RSA 195:14, I(d) (1999), which sets forth the procedure by which the DOE determines the "proportional share of the costs above adequacy to be assessed as local education taxes." As part of this procedure, the DOE must "determine each pre-existing district's proportional share of the total amount to be apportioned based on the cooperative school district formula." RSA 195:14, I(d)(i). The petitioners assert that this provision requires DOE to "itself determine each town's proportional share of the [cooperative school district's] budget." They contend that this entails verifying the figures that DOE receives from cooperative school districts. We disagree.

The plain and ordinary meaning of the word "determine" is to "fix conclusively" or to "come to a decision concerning as the result of investigation or reasoning." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 616. To determine something does not require verifying it. The Unified Article does not preclude the DOE from conclusively fixing or deciding each member town's proportional share of the expenses to be apportioned and thus complying with its duty under RSA 195:14, I(d).

■ Finally, the petitioners argue that the Unified Article's annual review process violates RSA 195:18, III(i) because it permits the cooperative school board and school administration to amend the apportionment formulas. We agree with the trial court that, to the contrary, the process merely gives the school board and school administrators the authority to review the school district's budget, add or delete line items, and adjust variables that change from year to year (such as a member town's average daily pupil membership). The annual review process does not authorize the school board or school administrators to amend the articles of agreement and thereby change the apportionment formulas.

As the petitioners did not prevail before the trial court and have not prevailed in their appeal, we need not address their request for prevailing party attorney's fees and expenses.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and GALWAY, JJ., concurred.