Strafford
No. 2004-805

JOHN SCHIAVI *& a.*

v.

CITY OF ROCHESTER *& a.*

Argued: June 22, 2005
Opinion Issued: July 29, 2005

*Bianco Professional Association,* of Concord (*James J. Bianco, Jr.* and *Melinda E. Dupre* on the brief, and *Mr. Bianco* orally), for the petitioners.

*Wensley, Wirth & Azarian, P.L.L.C.,* of Rochester (*Danford J. Wensley* and *Dianna J. Parker* on the brief, and *Mr. Wensley* orally), for the respondents.

GALWAY, J. The petitioners, manufactured housing park owner John Schiavi and housing park residents James Barker and William Watson, appeal an order of the Superior Court (*Mohl,* J.) denying their petition for a writ of mandamus requiring the respondents, the City of Rochester (City) and Melodie Esterberg, Commissioner of Public Works, to: (1) comply with RSA 205-A:6, II and begin direct billing for each individual housing park resident's water and sewer usage; and (2) make available all

appropriate deductions and exemptions to the individual residents' water and sewer bills. We vacate and remand.

Tara Estates housing park, a community in Rochester for persons fifty-five years of age and older, was licensed as a manufactured housing park in 1986. Schiavi has owned and operated Tara Estates since 1991. The residents own their homes but rent the lots upon which the homes are placed.

During the approval process for establishing Tara Estates, Schiavi's predecessors in interest entered into an agreement with the City for the extension of municipal water and sewer lines to the park. The attorney representing the park stated during the application process that all work done off-site, leading up to the park, would be under the auspices of the City. Specifically, the City would have the right to review the design, inspect the work, and take final acceptance and title to it, and have a bond to make sure that the work was done properly. In addition, the attorney represented that onsite improvements, including sewer and water lines, would be the responsibility of Tara Estates or its successors and of the individual lot lessees. Further, onsite improvements would be designed according to the City's standards. The City granted a license to Tara Estates, which constituted a contract with the City, in 1986.

Pursuant to RSA chapter 38, the City established and operates a "municipal water utility" called Water Supply Works (Utility), as part of the Rochester Department of Public Works. The Utility provides water and sewer services to its customers, and City residents receive quarterly bills for water services.

The City automatically discounts the water bills of any residential customer who qualifies for an "elderly exemption" under the customer's real estate taxes. Additionally, the City offers a deduction meter, which reduces the amount charged to a customer for water that does not enter the sewer system, such as water used for watering lawns and gardens, washing cars, and filling swimming pools.

Tara Estates has received water service from the Utility measured by a single master meter since 1986. The City bills Schiavi directly for the water services for the entire park. In 2001, Schiavi, at his own expense and without permission from the City or the Utility, installed individual meters on each manufactured house in the park. Schiavi requested that the City directly bill the residents individually, but it has continued to send him a single bill for water usage, requiring Schiavi to determine each resident's share of the bill. The City's refusal to bill the residents directly resulted in the filing of this petition for writ of mandamus.

The petitioners contended below that the residents have a legal right to be billed directly by the utility provider after a conversion pursuant to RSA 205-A:6, II has occurred. RSA 205-A:6, II (2000) provides:

> In the event that a park owner or operator shifts responsibility for payment of water, sewer, or any other utility service to the tenant, the park owner or operator shall be responsible for the cost incurred in the conversion, including the cost of installation of utility meters, if any, on each manufactured home in the park, except as permitted by the public utilities commission pursuant to RSA 374 and RSA 378. After such a conversion, manufactured housing park tenants shall be billed directly by the utility for the use of such services.

The trial court concluded that "the statute, as intended by the legislature, is meant to regulate solely the relationship between mobile home park tenants and owners, and has no effect on utility providers, municipal or private." We disagree.

To the extent that a dispute raises a new issue of statutory interpretation, we begin our inquiry with the examination of statutory language. *Appeal of Pinetree Power*, 152 N.H. 92, 96 (2005). In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *In the Matter of Jacobson & Tierney*, 150 N.H. 513, 515 (2004). We ascribe the plain and ordinary meanings to the words the legislature used. *Nilsson v. Bierman*, 150 N.H. 393, 395 (2003). Because interpretation of a statute is a question of law, we review the trial court's decision *de novo*. *Town of Acworth v. Fall Mt. Reg. Sch. Dist.*, 151 N.H. 399, 401 (2004).

Pursuant to RSA 205-A:6, II, a park owner has the ability and the right to shift responsibility for the payment of certain utilities from himself to the tenants. Once the right to shift payment responsibility has been exercised, the park owner is responsible for the cost incurred in the steps reasonably necessary for the utility to implement that shift. Those reasonably necessary steps constitute the "conversion" from the utility's billing the park owner to its direct billing of the housing park tenants. Once the steps reasonably necessary for the shift in billing have been identified, it is the park owner's burden to effectuate and pay for those steps. When the park owner has met that burden, the "manufactured housing park tenants *shall* be billed directly by the utility for the use of such services." RSA 205-A:6, II (emphasis added). Generally, the use of the word "shall" in a statutory provision is a command, requiring mandatory enforcement. *Franklin v. Town of Newport*, 151 N.H. 508, 510

(2004). We disagree, therefore, with the trial court's conclusion that the legislature intended the statute to regulate only the relationship between the manufactured housing park tenants and the owner.

The trial court also erred in reasoning that because Schiavi currently pays the utilities bills, he has not shifted the payment responsibility to the residents. Our review of the record indicates that Schiavi does, in fact, determine each tenant's share of the total utility bill by his own reading of the installed meters. He then, for a charge, submits this information to a third party, which processes it, and he then charges each tenant accordingly. Although Schiavi continues to make final payment of the utility bill, it is simply because of the City's refusal to bill the tenants directly, not because Schiavi has failed to shift responsibility.

The trial court's interpretation of the statute was an error of law. As such, we vacate its denial of the petitioner's writ and remand.

Although the statute defines neither a shift in payment responsibility nor a conversion, the language clearly empowers the park owner or operator to shift the payment responsibility to the tenants. *See* RSA 205-A:6, II. In addition, the statute states that "the park owner or operator shall be responsible for the cost incurred in the conversion, *including* the cost of installation of utility meters, if any, on each manufactured home in the park." *Id.* (emphasis added). As the installation of utility meters is not identified as the sole cost that may be involved in the conversion to individual tenant billing, the statute establishes that there may be other costs. *See id.*

On remand, the trial court must determine, pursuant to Schiavi's decision and right to shift responsibility for payment of the utility bill to the individual tenants, what steps are reasonably necessary for the City to effectuate this billing change, or "conversion." The trial court must then determine if Schiavi has taken the proper actions to both accomplish and pay for those reasonable steps. If so, then the City must bill the park tenants individually. If not, Schiavi should be afforded the reasonable opportunity to do so.

*Vacated and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.