Merrimack
No. 2007-065

GREEN MEADOWS MOBILE HOMES, INC. & a.

v.

CITY OF CONCORD

Argued: September 19, 2007
Opinion Issued: October 31, 2007

*Preti, Flaherty, Beliveau & Pachios, PLLP,* of Concord (*Mark H. Puffer* on the brief and orally), for the petitioners.

*Paul F. Cavanaugh,* city solicitor, of Concord, on the brief and orally, for the respondent.

DALIANIS, J. The petitioners, Green Meadow Mobile Homes, Inc. (Green Meadow) and Valley Stream Estates, Inc. (Valley Stream), appeal the order of the Superior Court (*Conboy,* J.) partially denying their petition for injunctive and declaratory relief brought against the respondent, the City of Concord. We affirm.

The record supports the following: The petitioners own and operate manufactured housing parks in Concord. Each park has approximately 108

home sites. With respect to each park, the petitioners own the land and lease individual home sites to tenants who own manufactured housing units. The City assesses taxes to each owner of a manufactured housing unit for the value of his or her unit and assesses taxes to the petitioners for the value of the land comprising the parks.

Generally, when a site becomes available in one of the petitioners' parks, either Valley Stream or Green Meadows, through a related company, will purchase a manufactured housing unit, place it on the vacant lot and offer it for sale. Once it has been purchased, generally the new owner occupies it on the lot and does not transfer it to a new location.

The petitioners brought the instant action to challenge the City's practice of taxing them for manufactured housing units, which they offer for sale and which are not yet connected to utilities, and its practice regarding moving abandoned units. The petitioners alleged in their petition that these practices violated pertinent statutes. The trial court found that the City permissibly taxed the petitioners for the manufactured housing units and declined to rule upon their claim regarding moving abandoned units. This appeal followed.

The petitioners first argue that the trial court erred when it affirmed the City's practice of taxing them pursuant to RSA 72:7-a, I (Supp. 2007). RSA 72:7-a, I, provides, in pertinent part:

> Manufactured housing suitable for use for domestic, commercial or industrial purposes is taxable as real estate in the town in which it is located on April 1 in any year if it was brought into the state on or before April 1 and remains here after June 15 in any year . . . . This paragraph shall not apply to manufactured housing held for sale or storage by an agent or dealer.

The petitioners assert that the City may not tax them for any unit that they hold for sale because they are "dealer[s]" of such units. We disagree.

In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Estate of Ireland v. Worcester Ins. Co.*, 149 N.H. 656, 661 (2003). We look first to the statutory language itself, and where possible, we ascribe the plain and ordinary meanings to words used. *Id.*

The term "dealer" is ambiguous. It can be broadly defined, as "one that does business" and "a person who makes a business of buying and selling goods esp[ecially] without altering their condition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 581 (unabridged ed. 2002). Or, it can be more narrowly defined as "one who buys the product in quantities and parcels it out by sale in lesser amounts; one who buys to sell as an avocation or business." 25A C.J.S. *Dealer* at 533 (1966). "Where the

statutory language is ambiguous or where more than one reasonable interpretation exists, we review legislative history to aid in our analysis." *Appeal of Ann Miles Builder*, 150 N.H. 315, 318 (2003) (quotation omitted).

RSA 72:7-a, I, was first enacted in 1955. *See* Laws 1955, 137:1. As first enacted, it provided that any manufactured housing unit (then called a "house trailer") used as a dwelling by a state resident would be taxed as personal property. *See id.* In 1961, this provision was repealed. *See* Laws 1961, 41:4. A new provision was enacted in its stead pursuant to which manufactured housing units, which were suitable for domestic, commercial or industrial use, were taxable as real estate, provided that certain conditions were met. *See* Laws 1961, 41:1. The last sentence of the new provision stated: "Nothing herein contained shall be construed as changing the method of taxing house trailers and mobile homes held by a manufacturer or dealer as part of his stock in trade." *Id.*

This sentence referred to the stock in trade tax. Under this tax, the "[s]tock in trade of merchants and shopkeepers employed in their trade or business constitute[d] personal estate liable to be taxed." *Bi-Rite, Inc. v. City of Concord*, 101 N.H. 291, 292 (1958). The tax was "levied upon the owner or possessor of the property at fixed annual intervals." *Bemis &c. Bag Co. v. Claremont*, 98 N.H. 446, 449 (1954).

In 1970, the legislature repealed the stock in trade tax, among other taxes, when it enacted the business profits tax, as part of the omnibus tax package. *See* Laws 1970, ch. 5; *Baxter Int'l v. State*, 140 N.H. 214, 217-18 (1995). In 1971, it amended the last sentence of RSA 72:7-a, I, to delete the reference to the stock in trade tax. *See* Laws 1971, 363:1. As amended, the last sentence read: "This paragraph shall not apply to mobile homes held for sale or storage by an agent or dealer." The purpose of this last sentence was to make clear that mobile homes held by dealers were exempt from taxation. *See* N.H.H.R. JOUR. 1462 (1971). In 1983, the sentence was amended to substitute "manufactured housing" for "mobile homes." *See* Laws 1983, 230:18.

This legislative history demonstrates that when the legislature deleted the reference to the stock in trade tax, it did not intend to expand the scope of the property tax in RSA 72:7-a, I. Both before the 1970 amendment and after, manufactured housing units that constitute the stock in trade of "dealer[s]" of such units were exempt from taxation under RSA 72:7-a, I. Both before the 1970 amendment and after, the word "dealer" as used in RSA 72:7-a, I, referred to those engaged in the business of selling manufactured housing units for whom such units constitute their "stock in trade."

■ "Stock in trade . . . is merchandise or goods kept for sale or traffic . . . ." *Woodworth v. Concord*, 78 N.H. 54, 55 (1915). It is "the equipment necessary to or used in the conduct of a trade or business" as in "the goods kept for sale by a shopkeeper" or "the aggregate of things necessary to carry on a business." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 2247. The trial court found that while the petitioners on occasion sell manufactured housing units, "they are not in the business of selling [such units]," but rather "are in the business of owning and managing manufactured housing parks." The court also found that the petitioners do not maintain an inventory of manufactured housing units at their parks. The record supports these findings, which we uphold. Manufactured housing units that are for sale but are not yet connected to utilities, therefore, are not necessary to carry on the petitioners' business and do not constitute their "stock in trade." Accordingly, the petitioners are not "dealer[s]" as that term is used in RSA 72:7-a, I.

■ The petitioners argue that even if they are not "dealer[s]," the trial court erred by affirming the City's practice of taxing them under RSA 72:7-a, I, because the manufactured housing units that they own are not yet connected to utilities and, thus, are not "suitable for use for domestic, commercial or industrial purposes." RSA 72:7-a, I. To the contrary, a manufactured housing unit may be "suitable for use for domestic, commercial or industrial purposes" without being tied to utilities. The plain meaning of the word "suitable" is "adapted to a use or purpose : FIT." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, *supra* at 2286. A manufactured housing unit may be fit for eventual use as a domestic dwelling or for commercial or industrial purposes as soon as it is manufactured with such use in mind, regardless of whether it is connected to utilities.

To support their argument, the petitioners mistakenly rely upon RSA 477:44 (Supp. 2007) and RSA 78-B:4, IV (Supp. 2007), which concern the real estate transfer tax, not the tax that is the subject of RSA 72:7-a, I. RSA 477:44 provides that a manufactured housing unit is deemed a building and therefore "real estate for the purposes of transfer" when it is "placed on a site and tied into required utilities." RSA 477:44, II. It says nothing about when the unit may be taxed as property pursuant to RSA 72:7-a, I, or when it is deemed fit for use as a dwelling or for commercial or industrial uses.

The petitioners' reliance upon RSA 78-B:4, IV is particularly perplexing. It defines when the sale of a manufactured housing unit is a taxable transfer. If the unit "constitutes the stock-in-trade" of a dealer and has not previously been occupied as a dwelling, then its initial sale by the dealer is

not a taxable transfer. RSA 78-B:4, IV(a). Conversely, if the unit has been occupied as a dwelling by anyone other than a dealer then its sale shall be a taxable transfer. RSA 78-B:4, IV(b).

Presumably, the petitioners intended to rely upon RSA 78-B:1, IV (2003), which like RSA 477:44, addresses when a manufactured housing unit is deemed "real estate" for the purposes of the transfer tax. RSA 78-B:1, IV, like RSA 477:44, II, provides that such a unit is "real estate" for purposes of the transfer tax when "it is placed on a site and tied into required utilities." RSA 78-B:1, IV; *see* RSA 477:44, II. Like RSA 477:44, II, RSA 78-B:1, IV does not address when a unit may be taxable as property under RSA 72:7-a, I. Nor does it address when a unit is deemed "suitable" for domestic, commercial or industrial uses.

The petitioners next contend that the trial court erred when it declined their request for a declaration that RSA 80:2-a (2003) does not apply to owners of manufactured housing parks when they move units owned and abandoned by park tenants. We hold that the trial court did not err in this respect.

■ RSA 80:2-a provides, in pertinent part, that "[n]o building or structure that is taxed as real estate . . . , shall be moved from the location where it was last taxed unless the owner thereof shall produce and deliver to the person moving the same" a receipted tax bill, a certificate from the city that all taxes have been paid in full, or a statement signed by a majority of the board of selectmen or assessors that the unit may be relocated even though the assessed taxes have not been paid. This statute, on its face, applies to *any* person or entity that moves a building or structure taxed as real estate. The language of the statute is not limited, as petitioners suggest, to the owner of said building or structure. The statute, under its plain terms, prohibits *any* such building or structure from being relocated by *anyone* unless certain conditions are met.

RSA 80:2-a exempts only "manufactured housing consisting of the stock-in-trade of a dealer in the business of selling manufactured housing." The petitioners do not argue that this exemption applies to them. We, therefore, conclude that the trial court did not err by denying the petitioners' request for a declaratory judgment that RSA 80:2-a does not apply when the owner of a manufactured housing park moves an abandoned unit.

Our holding is buttressed by the alternative remedy under RSA 205-A:4-a, VII (2004), which is available to the petitioners when a tenant has abandoned a unit. RSA 205-A:4-a, VII permits a manufactured housing

park owner, under certain conditions, to relocate an abandoned unit without complying with RSA 80:2-a. Under RSA 205-A:4-a, VII, a park owner who has obtained a writ of possession against a tenant is granted a lien on the unit for the amount of rent and other charges due from the tenant and for reasonable moving and storage costs. RSA 205-A:4-a, VII permits the park owner to sell the unit to recover the amount of its claim subject to the tenant's homestead rights, unless those rights have been deemed waived because, for instance, the tenant has abandoned the premises. Under RSA 205-A:4-a, VII, "[t]he board of selectmen or assessors . . . may issue a statement that the manufactured housing may be relocated without the payment of the taxes assessed thereon as provided in RSA 80:2-a in the event the proceeds from the sale are insufficient to pay the full amount of the property tax outstanding."

Indeed, the petitioners concede, without citing RSA 205-A:4-a, VII, that this is the process they follow. As they note in their brief, when a tenant has abandoned a unit, "the petitioners file a Landlord-Tenant eviction action in Concord District Court, based on nonpayment of rent, and obtain a Writ of Possession." Having obtained a writ, the petitioners may, thereafter, avail themselves of the remedy set forth in RSA 205-A:4, VII.

For all of the above reasons, therefore, we hold that the trial court did not err when it denied the petitioners the declaratory relief they sought with respect to RSA 80:2-a.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.