NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2015-0400


EVERETT ASHTON, INC.

v.

CITY OF CONCORD

Argued: February 10, 2016
Opinion Issued: April 29, 2016


Bianco Professional Association, of Concord (James J. Bianco, Jr. and Thomas P. Colantuono on the brief, and Mr. Bianco, Jr. orally), for the plaintiff.


City Solicitor's Office, of Concord (Danielle L. Pacik, deputy city solicitor, on the brief and orally), for the defendant.


New Hampshire Municipal Association, of Concord (Stephen C. Buckley and Margaret M.L. Byrnes on the brief), as amicus curiae.


Smith-Weiss Shepard, P.C., of Nashua (Robert M. Shepard and Tanya L. Spony on the brief), for New Hampshire Community Loan Fund, as amicus curiae.

HICKS, J.  The defendant, the City of Concord (City), appeals an order of the Superior Court (Delker, J.) requiring it to issue demolition permits to the plaintiff, Everett Ashton, Inc. (Everett Ashton), so that Everett Ashton may remove three abandoned, valueless manufactured homes from its manufactured housing park.  The court also ruled that the City could not place a lien on Everett Ashton's park for the unpaid water bills of the former residents of the abandoned homes, and that, by withholding demolition permits, the City engaged in a regulatory taking, entitling Everett Ashton to compensation and attorney's fees.  We affirm the court's ruling that the City must issue the demolition permits, reverse its rulings concerning the unpaid bills and the regulatory taking, vacate the award of attorney's fees, and remand.

The trial court recites in its order, or the record supports, the following facts.  Everett Ashton owns a manufactured housing park in Concord.  The park is divided into lots that individuals may rent for their manufactured homes.  Tenants of the park own the manufactured homes, and they alone pay property taxes on the homes.  See RSA 73:16-a (2012).  Each lot receives water and sewer services from the City.  Everett Ashton installed utility meters on the homes in its park.  The City bills the tenants directly for water and sewer services.

After neglecting to pay rent for a number of months, three tenants abandoned their manufactured homes.  Everett Ashton obtained writs of possession, and the City condemned the homes.  Because the homes had no value, even as scrap metal, Everett Ashton sought to remove them from its park.

Everett Ashton applied for demolition permits from the City.  The City refused to issue the permits because of outstanding property taxes owed on the homes.  Everett Ashton requested that the City abate the taxes.  The City partially granted that request, abating the taxes on two of the homes for the 2013 tax year.  Everett Ashton asked the City to reconsider its refusal to fully abate the taxes on the grounds that it was not obligated to pay them.  The City declined to issue the demolition permits until the taxes were paid.  Everett Ashton alleges that, in a telephone conversation, a representative of the City told Everett Ashton's president that "the homes could just sit there until you pay [the taxes]."

The City sent tax bills for all three homes to Everett Ashton as well as a notice of tax lien on one of the homes.  The City filed tax liens on all three homes in Everett Ashton's name with the Merrimack County Registry of Deeds.  The City also sent Everett Ashton water bills for one of the homes.

Everett Ashton sued the City, seeking declaratory and injunctive relief and damages.  It requested that the court issue a declaration that it is not

liable for its former tenants' taxes or water bills and order the City to either remove the manufactured homes or issue demolition permits. It claimed that, by withholding the permits, the City engaged in a taking for which Everett Ashton was entitled to compensation. It also requested costs and reasonable attorney's fees.

Following a preliminary injunction hearing, the trial court ruled that the City must issue the demolition permits. The court scheduled a final hearing, and on the day of that hearing, the parties agreed to submit trial memoranda so that the court could decide the case on the pleadings.

In its final order, the court ruled that the City was required to issue the demolition permits, that the City could not place a lien on Everett Ashton's land for its former tenants' unpaid water bills, and that Everett Ashton was entitled to compensation and attorney's fees because the City's refusal to issue the demolition permits resulted in a regulatory taking. The City appealed.

The first issue is whether the City must allow Everett Ashton to demolish the abandoned, valueless manufactured homes. The trial court determined that RSA 80:2-a (2012) and RSA 205-A:4-a, VII (2011) required that the City issue demolition permits. The trial court also determined that even if the statutes granted the City discretion "to deny [Everett Ashton's] request to waive the tax lien" and permit demolition, it exercised its discretion in an arbitrary manner. The City argues that it did not act arbitrarily and that the trial court erroneously interpreted the statutes.

"Statutory interpretation is a question of law, which we review de novo." Petition of Malisos, 166 N.H. 726, 729 (2014). In matters of statutory interpretation, "[w]e are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Appeal of Wilson, 161 N.H. 659, 662 (2011). "We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Appeal of Local Gov't Ctr., 165 N.H. 790, 804 (2014). "Unless we find statutory language to be ambiguous, we will not examine legislative history." Forster v. Town of Henniker, 167 N.H. 745, 750 (2015).

In general, manufactured housing is taxable as real estate in the town in which it is located. RSA 72:7-a (Supp. 2015). "[T]he tax due upon the manufactured housing shall only be assessed to the owner of the manufactured housing, and not upon the owner of the land upon which the manufactured housing is left." RSA 73:16-a (emphasis added).

RSA 80:2-a provides that certain conditions must be met to relocate manufactured homes: "No building or structure that is taxed as real estate . . .

3

shall be moved from the location where it was last taxed unless the owner thereof shall produce and deliver to the person moving the same a receipted tax bill," a certificate from the municipality that all taxes have been paid in full, or a statement signed by a majority of the board of selectmen or assessors that the unit may be relocated even though the assessed taxes have not been paid. RSA 80:2-a. We have held that this statute applies to any person or entity that moves a building or structure that is taxed as real estate. Green Meadows Mobile Homes v. City of Concord, 156 N.H. 394, 398 (2007). The statute is not limited to the owner of the building or structure. Id.

We have also noted that, when a tenant abandons his or her manufactured home, a park owner who has obtained a writ of possession may, under certain conditions, relocate the home without complying with RSA 80:2-a. Id. at 398-99. Among other things, "RSA 205-A:4-a, VII permits the park owner to sell the unit . . . subject to the tenant's homestead rights, unless those rights have been deemed waived because, for instance, the tenant has abandoned the premises." Id. at 399. Concerning the abandoning tenant's unpaid taxes, the statute states:

> Upon sale of the manufactured housing, the park owner or operator shall convey the manufactured housing by means of a deed . . . . The board of selectmen or assessors . . . may issue a statement that the manufactured housing may be relocated without the payment of the taxes assessed thereon as provided in RSA 80:2-a in the event the proceeds from the sale are insufficient to pay the full amount of the property tax outstanding.

RSA 205-A:4-a, VII (emphasis added).

The City argues that "[t]he plain and ordinary language of RSA 80:2-a and RSA 205-A:4-a, VII show[s] that the legislature intended to grant discretion to municipalities when a park owner requests permission to relocate a manufactured home even though the assessed taxes have not been paid" by the abandoning tenant. According to the City, the statutes contain no "requirement for the board of assessors to allow the relocation of the [manufactured] home when there are outstanding taxes, even when the [home] may not have any residual value." The City emphasizes that the legislature used the word "may," not "shall," in RSA 205-A:4-a, VII "as to whether the board of assessors will issue a statement that the manufactured housing may be relocated without the payment of the taxes." The City observes that it is a general rule of statutory construction "that the word 'may' is permissive, and the word 'shall' is mandatory." See Appeal of Coos County Comm'rs, 166 N.H. 379, 386 (2014). Thus, the City argues that we should "reverse the [trial] court's decision that the City is required to issue . . . demolition permit[s]" for the abandoned manufactured homes in Everett Ashton's park.

4

We find that the statutes are unambiguous; thus, we need not rely upon legislative history. RSA 73:16-a plainly forbids taxing park owners for their tenants' manufactured homes. Moreover, by using the word "may" in RSA 205-A:4-a, VII, the legislature plainly intended to give municipalities discretion to permit or prohibit the relocation of manufactured homes "in the event the proceeds from the sale [of those homes] are insufficient to pay" outstanding taxes. RSA 205-A:4-a, VII (emphasis added).

However, a municipality's discretion under RSA 205-A:4-a, VII is not unlimited; it must not be exercised in an abusive or arbitrary manner. See 2A E. McQuillin, The Law of Municipal Corporations § 10:36, at 540-41 (3d ed. rev. 2006) ("Where a municipal board is authorized to do a particular act in its discretion, the courts will not control that discretion unless manifestly abused . . . ."). Here, the City refused to allow Everett Ashton to remove the valueless, abandoned homes until it paid taxes thereon, despite express statutory provision that park owners are not responsible for such taxes. RSA 73:16-a. We conclude that this refusal exceeded the scope of the discretion granted to the City under RSA 205-A:4-a because, as the trial court noted, to conclude otherwise would permit the City to hold Everett Ashton "hostage by refusing to allow the removal of . . . derelict home[s] even though [Everett Ashton] cannot be held liable for the unpaid taxes." The legislature could not have intended for the discretion that it granted in RSA 205-A:4-a, VII to be exercised in a way that would allow the City to nullify RSA 73:16-a. We therefore uphold the trial court's ruling that the City must issue the demolition permits.

The City argues that, in the trial court, "Everett Ashton never properly raised a claim" that the City acted arbitrarily or abusively. However, in its complaint, Everett Ashton stated that the City's "conduct is illegally attempting to circumvent the prohibitions and requirements of RSA 73:16-a." It also accused the City of "misusing its police power" by "failing to permit the demolition of the . . . units and by ignoring requests for attention." Accordingly, we reject the City's preservation argument.

The next issue is whether, under RSA 38:22 (Supp. 2015) and RSA 205-A:6, II (2011), the City may place a lien on Everett Ashton's land for its tenants' unpaid water bills. In concluding that the City may not do so, the trial court found that RSA 205-A:6, II allowed Everett Ashton to shift responsibility for the bills to its tenants after it had installed utility meters on each of its lots. The court reasoned that, "[a]fter a park owner establishes individual metering, RSA 205-A:6, II does not indicate that the park owner retains any responsibility for paying the water bills." The City argues that the trial court erred because nothing in the statute "prevents a lien from being placed on the park owner's property."

RSA 38:22, I, states that, except as otherwise provided, "all charges for services furnished to patrons by a municipally owned electric, gas, water, or

5

wastewater utility shall create a lien upon the real estate where such services are furnished." RSA 38:22, II(d) makes liens effective against the owner of the real estate even "[w]hen . . . services [are] furnished to some person or legal entity other than the owner," as long as the municipality notifies the owner within 120 days after the utility charges become delinquent. Municipalities may bill park owners for the water, sewer, and other utility services provided to tenants. See Schiavi v. City of Rochester, 152 N.H. 487, 488 (2005). However, RSA 205-A:6, II allows a park owner to "shift[] responsibility" for the payment of utility bills to its tenants if the park owner installs utility meters on each manufactured home. After the park owner installs the meters, "manufactured housing park tenants shall be billed directly by the" municipality. RSA 205-A:6, II.

Nothing in RSA 205-A:6, II prevents the City from placing a lien on Everett Ashton's land for the unpaid water bills. The statute merely states that, if a park owner installs utility meters on its tenants' manufactured homes, the municipality must send individualized utility bills to the park owner's tenants. See RSA 205-A:6, II; Schiavi, 152 N.H. at 489-90. The statute does not state that, after utility meters are installed, the municipality may no longer place a lien on the park owner's land under RSA 38:22, II(d) if the tenants fail to pay their bills. RSA 205-A:6, II mentions "shift[ing] responsibility," but the "responsibility" that it refers to is the responsibility to pay the bills that the municipality sends. RSA 205-A:6, II; see Schiavi, 152 N.H. at 489-90. Interpreting that language also to vitiate the lien provision in RSA 38:22, II(d) would "add language [to RSA 205-A:6, II] that the legislature did not see fit to include," which we will not do. Appeal of Local Gov't Ctr., 165 N.H. at 804.

Everett Ashton counters that the term "real estate" in RSA 38:22, II(d) refers to the manufactured homes, not the park owner's land. Thus, it argues, the City's only option was to place a lien on the manufactured homes. Everett Ashton asserts that the trial court correctly found that "any ambiguity about the meaning of the term 'real estate' is clarified by RSA 21:21, II which defines manufactured housing as 'real estate[,]' and by RSA 72:7-a which provides that manufactured housing is taxed as 'real estate.'" We disagree.

RSA 21:21 includes manufactured housing "in the term real estate" along with all "lands, tenements, and hereditaments, and all rights thereto and interests therein." RSA 21:21 (2012). This broad definition encompasses not only the manufactured homes, but also Everett Ashton's park. It does not establish that RSA 38:22, II(d) authorizes liens only on the manufactured homes in this case. Similarly unavailing is Everett Ashton's argument based upon the property taxation statute. Manufactured housing may be taxed as real estate under RSA 72:7-a, but that does not mean that "real estate" in RSA 38:22, II(d) refers only to the manufactured homes. Thus, we interpret "real estate" in RSA 38:22, II(d) to include the land upon which utility services are

furnished.  Our interpretation is supported by the plain language of RSA 38:22, II(d), which makes liens effective against the owner of real estate — here, Everett Ashton — even if persons other than the owner — here, Everett Ashton's tenants — are responsible for paying for the utility services furnished upon that real estate.  Accordingly, we reverse the trial court's ruling that the City could not place a lien on Everett Ashton's land for its tenants' unpaid water bills.

Next, we address the issue of whether, by withholding the demolition permits, the City committed a regulatory taking under the New Hampshire Constitution.  See N.H. CONST. pt. I, art. 12.  "Whether the City's actions are sufficient to constitute a taking is a question of law reviewed de novo."  J.K.S. Realty v. City of Nashua, 164 N.H. 228, 233 (2012).  The trial court explained that "the City forced [Everett Ashton] to keep the condemned and worthless homes on its property," and, as a result, Everett Ashton "could not rent those lots to other paying tenants."  Thus, the court concluded, "because the City unreasonably exercised its regulatory authority to deny [Everett Ashton] the demolition permit[s]," a compensable taking occurred.  The City argues that there was no taking because its "conduct resulted from, at most, its mistaken interpretation of valid statutes."

The New Hampshire Constitution provides that "no part of a man's property shall be taken from him . . . without his own consent."  N.H. CONST. pt. I, art. 12.  "A 'taking' occurs when the application of a regulation to a particular parcel denies the owner an economically viable use of his or her land."  Bio Energy v. Town of Hopkinton, 153 N.H. 145, 156 (2005) (quotation omitted).  "Arbitrary or unreasonable restrictions which substantially deprive the owner of the economically viable use of his land in order to benefit the public in some way constitutes a taking within the meaning of our New Hampshire Constitution requiring the payment of just compensation."  Id. (quotation and brackets omitted).  "However, erroneous . . . decisions based on mistaken interpretations of valid regulations differ materially from technically precise applications of invalid ordinances; a mistaken . . . decision does not effect a taking when the erroneous decision resulted from misconstruction of otherwise valid restrictions."  Id. (quotation and brackets omitted).

Here, Everett Ashton does not question the validity of the statutes concerning the taxation and relocation of manufactured homes.  The City interpreted one of those statutes, which provides that it may allow a park owner to relocate manufactured homes with outstanding taxes, to mean that it may refuse to allow relocation in the circumstances of this case.  See RSA 205-A:4-a, VII.  We conclude that, under the circumstances of this case, the City acted outside the bounds of its discretion under the statute.  However, because Everett Ashton does not challenge the statute's validity, and the misapplication of a valid statute does not effect a regulatory taking, see Bio

7

<u>Energy</u>, 153 N.H. at 156, we hold that no taking occurred, and that Everett Ashton is not entitled to compensation.

Everett Ashton cites <u>Burrows v. City of Keene</u>, 121 N.H. 590 (1981), for the proposition that "arbitrary or unreasonable restrictions which substantially deprive the owner of the 'economically viable use of his land' . . . constitute a taking." <u>Burrows</u>, 121 N.H. at 598. Pointing to the trial court's finding that the City arbitrarily refused to issue the demolition permits, Everett Ashton argues that we should uphold the court's ruling under <u>Burrows</u>. We do not discount the possibility that, in other circumstances, a municipality's application of a statute could result in a taking. But, here, the City relied on the statute's plain language, legislative history, and our case law; and until now, we have not been called upon to offer guidance on the breadth of the City's discretion under the statute. Thus, we reject Everett Ashton's argument that <u>Burrows</u> requires affirmance of the trial court's ruling.

Based upon its conclusion that the City's actions constituted a regulatory taking, the trial court also concluded that Everett Ashton was entitled to attorney's fees. <u>See</u> <u>id</u>. at 601. We will not overturn a "trial court's decision concerning attorney's fees absent an unsustainable exercise of discretion." <u>Blouin v. Sanborn</u>, 155 N.H. 704, 708 (2007). Because we reverse the trial court's ruling that an unconstitutional taking occurred, we vacate the award of attorney's fees. We remand for further proceedings consistent with this opinion.

<u>Affirmed in part; reversed in part; vacated in part; and remanded</u>.

CONBOY, LYNN, and BASSETT, JJ., concurred.